SOUTHERN DISTRIBUTING
COMPANY, INC., et al.,
Plaintiffs-Appellants,

v.

SOUTHDOWN, INC., et al.,
Defendants-Appellees.
No. 77–2673.
United States Court of Appeals,
Fifth Circuit.

June 7, 1978.

---

Charles R. Shaddox, Stephen E. Walraven, San Antonio, Tex., for plaintiffs-appellants.

Keith E. Kaiser, San Antonio, Tex., Kenneth R. Wynne, H. Bruce Golden, Houston, Tex., for defendants-appellees.

Before COWEN *, Senior Judge, GOLDBERG and AINSWORTH, Circuit Judges.

COWEN, Senior Judge:

The appellants (hereinafter plaintiffs) are eight former distributors of Jax beer, who brought this civil action in the district court seeking redress for several alleged violations of the Sherman Act and the Clayton Act. Southdown, Inc. (Southdown) is a financial holding company which does not manufacture, sell, or compete in the beer market. Pearl Brewing Company (Pearl) is a regional brewer which is wholly owned by Southdown. Jax Beer USA (Jax USA) was

* Senior Judge of the Court of Claims, sitting by designation.

a wholly owned subsidiary of Pearl which was organized solely as Pearl's vehicle for the acquisition of labels, trademarks and brewing rights of Jackson Brewing Company (Jackson), which has now been dissolved. Plaintiffs' original allegations complained of a number of violations of the Federal antitrust laws, but after extensive discovery, plaintiffs abandoned all of these except a complaint that there was a violation of section 1 of the Sherman Act.[1]

The case is before this court on appeal of the district court's order, which granted appellees' motion for summary judgment. The district court decided that there was no violation of section 1 of the Sherman Act and that the plaintiffs had no standing to sue.

After careful examination of the evidence, we feel compelled to conclude that the plaintiffs have presented no material facts which raise a triable issue on the merits of their claim under section 1 of the Sherman Act. Therefore, we affirm the judgment of the district court on that ground. Although there is some doubt about it, we have, for the purpose of disposing of the appeal, assumed arguendo that plaintiffs have standing to sue.

Jackson was a regional brewer of Jax beer. Its sales declined to the extent that the brewery was closed in May 1974. On June 3, 1974, its principal creditor, the American Can Company, foreclosed its lien, liquidated the assets and sold the Jackson labels, trademarks and brewing rights through Jax USA to Southdown. In November 1974, after the sale to Southdown, the company was placed in involuntary bankruptcy. Southdown negotiated the purchase from American Can Company and thereafter turned the Jax trademark, label and formula over to Pearl. Southdown then left the brewing and marketing of the beer, including the selection of distributors, entirely to Pearl.

Neither Southdown nor Pearl assumed any of Jackson's contractual obligations to Jackson's distributors or otherwise. There-fore, plaintiffs' rights to distribute Jax beer expired when Pearl acquired the assets, and there is no claim that Pearl was obligated to select plaintiffs as distributors of Jax beer.

In late July 1974, Pearl gave notice to 53 former Jax distributors, including the eight plaintiffs, that they would no longer be distributors of Jax beer. Thirty-one former Jax distributors were reappointed.

■ We are mindful that:

\* \* \* [s]ummary judgment can be granted only if there is no genuine dispute as to any material fact [and] \* \* [t]his requirement is to be strictly construed so as to insure that factual issues will not be determined without the benefit of the truth-seeking procedures of a trial.

*Jackson Tool & Die, Inc. v. Smith*, 339 F.2d 88, 91 (5th Cir. 1964). All doubt "as to the existence of a genuine issue of material fact" must be resolved against the moving party, and the court "should not assess the probative value of any of the evidence." *Gross v. Southern Ry. Co.*, 414 F.2d 292, 297 (5th Cir. 1969). But it has also long been the rule in the court that "[a] pretended issue, one that no substantial evidence can be offered to maintain, is not genuine." *Fireman's Mutual Ins. Co. v. Aponaug Mfg. Co.*, 149 F.2d 359, 362 (5th Cir. 1945). Despite the numerous depositions taken and the voluminous documentary evidence obtained by plaintiffs in discovery procedures, they have not mustered the substantial evidence required to defeat summary judgment.

Plaintiffs claim that Pearl refused to deal with them in order to further and facilitate a conspiracy among Southdown, Pearl and Pearl's wholesalers to fix prices and eliminate competition. The record does not support this contention. After Pearl purchased the Jax beer properties, Pearl analyzed its marketing areas and on the basis of a number of factors, made a business judgment in selecting distributors whom Pearl felt

---

1. The Act provides: "Every contract, combination \* \* \* or conspiracy, in restraint of trade \* \* \* is \* \* \* illegal." 15 U.S.C. § 1 (1976).

would strengthen the Jax beer brand and make money. In making the appointments, Pearl considered distributors of Pearl beer, the former distributors of Jax beer, and in a few cases, distributors of other brands of beer. In some instances, Pearl made the selections on recommendations of its district managers. In other instances, the recommendations of the district managers were not followed.

In 1973, prior to the date Southdown negotiated the purchase from American Can Company, Pearl's wholesale distributors had a meeting in which they unanimously agreed that their efforts to sell Pearl beer at the same prices charged for such premium beers as Budweiser and Schlitz, was an unwise marketing policy and that Pearl beer should be sold at a popular price, which would enable retailers to sell the beer at 12 to 16 cents per six-pack lower than the prices charged for the premium beers. In order to accomplish this objective, it was agreed that it was not necessary to reduce the price of Pearl beer, but merely to retain existing price levels because prices of the premium brands were being increased. The adoption of this pricing practice significantly increased the sale of Pearl beer.

A former district manager of Pearl testified that before any of the distributors of Pearl beer in his territory was selected as a distributor of Jax beer, he was asked to sign a written commitment regarding the manner in which he would conduct his business if appointed a distributor of Jax beer. As one of the commitments, he agreed that "pricing would remain at the Pearl level." However, there is no evidence that such a commitment was requested of or obtained from any of the 31 former Jax distributors who were appointed by Pearl to distribute Jax beer, or that any former Jax distributor was not selected because of his refusal to follow any specified pricing practices.

It has long been recognized that a manufacturer has the right to select its customers and to refuse to sell its goods to anyone for reasons sufficient to itself. *United States v. Colgate*, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992 (1919).

In *United States v. Parke, Davis & Co.*, 362 U.S. 29, 80 S.Ct. 503, 4 L.Ed.2d 505 (1960), the Supreme Court reviewed a number of its prior decisions involving violations of the Sherman Act in civil actions brought by the government against manufacturers. The Court reiterated former holdings that it was not unlawful for a manufacturer to suggest his wishes concerning the price at which his products are to be sold and to decline further dealings with those who failed to observe them. Among other things, the Court stated:

* * * In other words, an unlawful combination is not just such as arises from a price maintenance *agreement*, express or implied; such a combination is also organized if the producer secures adherence to his suggested prices by means which go beyond his mere declination to sell to a customer who will not observe his announced policy. [362 U.S. at 43, 80 S.Ct. at 511.]

In that case there was a showing that Parke Davis had announced a policy of refusing to deal with retailers who failed to observe suggested retail prices; that it discontinued direct sales to dealers who failed to abide by the announced policy, and that it induced wholesale distributors to stop selling its products to the offending retailers.

The facts in this case are wholly different. Pearl did not refuse to deal with any of the plaintiffs or any former distributor of Jax beer because he would not agree to fix prices or engage in practices that would eliminate competition. Pearl did not terminate any of the plaintiffs as distributors of Jax beer. They lost their rights when Jackson ceased to do business because of its financial collapse. Each of plaintiffs testified that he was not subjected to any unlawful conditions or requested to enter into any unlawful agreements as a condition to receiving a Jax distributorship. In fact, none of the plaintiffs was offered a Jax distributorship by Pearl.

As this court held in *Universal Brands, Inc. v. Philip Morris Inc.*, 546 F.2d

30 (1977): "If the refusal to deal is a device used to * * * fix prices, or to * * * drive out competitors * * * it is illegal." [at p. 33.] However, there is no proof here that Pearl refused to deal with the plaintiffs in order to fix prices for the sale of Jax beer or to eliminate competition. The essential ingredient missing in plaintiffs' case is evidence showing a causal connection between Pearl's failure to select plaintiffs as distributors and the pricing policies and practices of Pearl and its distributors. *See Ricchetti v. Meister Brau, Inc.*, 431 F.2d 1211, 1214 (9th Cir. 1970). *Cf. United States v. General Motors*, 384 U.S. 127, 148, 86 S.Ct. 1321, 1332, 16 L.Ed.2d 415 (1966), (Harlan, J., concurring).[2]

■ Plaintiffs' allegation that Southdown conspired with Pearl and Pearl's wholesalers to fix prices and eliminate competition is without foundation in the record. The evidence is undisputed that Southdown was not in the picture after it negotiated the deal with American Can Company and that Southdown did not participate in selecting distributors for Jax beer. The record is also clear that the appointments were made by Pearl's management, without any participation by others, including Pearl's distributors.

■ Plaintiffs have also failed to produce evidence that the failure to appoint them as Jax distributors eliminated competition. The record shows that before Pearl acquired the Jax trademark, label and formula, there were 84 Jax distributors and that after Pearl made its appointments, the number was increased to 101.

In summary, we conclude that on the basis of the record before it, the district court did not err in granting summary judgment in favor of the appellees. Therefore, the decision of that court is hereby—

AFFIRMED.

2. " * * * *Parke Davis* held that a manufacturer cannot maintain resale prices *by refusing to sell to those who do not follow his suggested prices if the refusal is attended by concerted* *action with his customers*, even though he may unilaterally so conduct himself. *See United States v. Colgate & Co.*, 250 U.S. 300, 39 S.Ct. 465, 63 L.Ed. 992." [Emphasis added.]