Margaret **RHOADES, individually and on behalf of all others similarly situated, Plaintiffs-Appellees Cross-Appellants,**

v.

The Honorable Craig **PENFOLD, individually and in his official capacity as Judge, 304th Judicial District Court, Dallas County, Texas, et al., Defendants-Appellants Cross-Appellees.**

No. 82–1209.

United States Court of Appeals, Fifth Circuit.

Jan. 6, 1983.

Charles J. Baldree, Asst. Dist. Atty., Dallas, Tex., for defendant-appellant, cross-appellee Penfold.

Margaret S. McGloin, Asst. Atty. Gen., Austin, Tex., for defendants-appellants, cross-appellees Johnston and McKenzie.

John H. Wright, Jr., Brenda J. Garrett, Lawrence L. Mealer, Dallas, Tex., for plaintiffs-appellees, cross-appellants.

Before RUBIN and JOHNSON, Circuit Judges, and VERON *, District Judge.

JOHNSON, Circuit Judge:

Margaret Rhoades initiated this § 1983 class action in federal district court seeking relief from a Texas district court's judgment that permanently terminated her parental rights with respect to her daughter, Summer Snow. Rhoades requested injunctive and declaratory relief maintaining that the state termination proceeding deprived her, and other indigent parents similarly situated, of due process of law and equal protection in that she was not provided court-appointed counsel.[1] The federal district court, in response to Rhoades' motion for summary judgment, certified the class, vacated the state court's judgment, and enjoined the state from attempting to enforce its judgment. While cognizant of the need for finality in suits affecting the parent-child relationship, this Court reverses the district court's judgment and remands this case for further proceedings consistent with this opinion.

## I.

Jeffrey and Margaret Rhoades have two daughters, Sunshine and Summer Snow. During the relevant time period involved in the termination proceeding, both children occasionally lived with Margaret Rhoades' mother, Margaret Zimmerman, and Margaret Zimmerman's friend, Ann West. In May 1979, Sunshine was the subject of parental termination proceedings initiated in Austin, Texas. In that case, the parents were represented by counsel and they succeeded in maintaining custody of Sunshine.

On June 15, 1979, after a series of incidents raising concern as to Summer Snow's welfare,[2] officers of the Richardson, Texas, Police Department took Summer Snow and placed her in the custody of the Dallas County Child Welfare Unit (DCCWU) of the Texas Department of Human Resources. On June 19, 1979, a petition for emergency care was filed in the state district court pursuant to § 17.01 of the Texas Family Code, and, on the same day, an *ex parte* order was issued placing Summer Snow in the temporary custody of DCCWU. Thereafter, on June 29, 1979, a hearing was held and Cynthia McKenzie, Program Director of DCCWU, was appointed temporary managing conservator of Summer Snow. Although Margaret Rhoades appeared in person, she was not represented by counsel.

In July 1979, Margaret Rhoades applied for legal representation with the Dallas Legal Aid Society (DLAS). A DLAS lawyer filed an answer in the termination proceeding for Rhoades, and, thereafter, several DLAS attorneys represented Rhoades over the next 10 month period. However, the last attorney assigned to represent Rhoades

* District Judge of the Western District of Louisiana, sitting by designation.

1. Rhoades also sought habeas corpus relief in her original complaint. However, the district court refused to grant habeas corpus relief and that decision has not been complained of on appeal. *See Lehman v. Lycoming County Children's Agency,* —— U.S. ——, 102 S.Ct. 3231, 73 L.Ed.2d 928 (1982) (holding that no habeas corpus jurisdiction under 28 U.S.C. § 2254 exists to challenge the constitutionality of a state statute providing for involuntary termination of parental rights).

2. Several caseworkers testified that Rhoades neglected Summer Snow. On June 15, 1979, Rhoades left Summer Snow unattended while she hitchhiked with Sunshine looking for her husband, Jeffrey Rhoades. Additionally, after the police took custody of Summer Snow, she was kidnapped by Ann West and kept in an open field for several days, and, as a consequence, received numerous injuries.

never consulted with her, did not return her telephone calls, and failed to appear at an office appointment requested by Mrs. Rhoades. Consequently, Mrs. Rhoades requested that DLAS withdraw from her case and DLAS filed a motion to withdraw, which was granted by the state district judge. Rhoades was unsuccessful in her attempts to employ other counsel prior to trial.

The jury trial on the termination proceeding lasted approximately three and one-half days. Although the state district judge told Mr. and Mrs. Rhoades that they had a right to be represented by counsel, the record indicates that he did not inform them that an attorney would be appointed if they could not afford one.[3] The State of Texas called nine witnesses to testify, including: three welfare caseworkers, a deputy constable, two Richardson police officers, two private individuals, and a clinical psychologist. Mr. and Mrs. Rhoades called no witnesses but both took the stand and testified. In response to special issues, the district judge rendered a judgment permanently terminating the parental rights of Mr. and Mrs. Rhoades. Thereafter, Mr. and Mrs. Rhoades again applied for representation by the Dallas Legal Services Foundation (DLSF) and a DLSF attorney filed a motion for new trial and an affidavit of inability to pay costs of appeal. The motion for new trial was overruled and the state court of appeals issued a certificate of refusal to file the record on appeal because the affidavit of inability to pay costs was not timely filed.

On October 17, 1980, Rhoades filed suit in federal district court against the district judge in the state termination proceeding, Judge Craig Penfold, the Commissioner of the Texas Department of Corrections, Marlin Johnston, and Cynthia McKenzie, Program Director, DCCWU, seeking declaratory, injunctive, and habeas corpus relief. Thereafter, an amended complaint was filed in which Rhoades was named as plaintiff and class representative for other indigent parents similarly situated. In response to a motion for summary judgment, the district court rendered judgment vacating the judgment of the state district court and ordered that, prior to a retrial of Rhoades' case, a hearing be held to determine indigency and the concomitant right to counsel. Furthermore, having certified the class, the district court's judgment concluded that indigent parents whose children "were, are, or will be" the subject of termination proceedings should be granted a hearing "to determine indigency and the need for appointed counsel . . . ." An appeal has been perfected to this Court pursuant to 28 U.S.C. § 1291.

## II.

Defendants-appellants maintain that the federal district court erred in refusing to dismiss the instant proceeding. Initially, appellants contend that the district court lacked jurisdiction to hear this case. Additionally, appellants argue that even if the district court had jurisdiction, it erred in refusing to abstain, and, finally, appellants claim that the doctrine of res judicata bars the present litigation. This Court holds that the district court did have jurisdiction, did not err in refusing to abstain, and did not err in refusing to apply the doctrine of res judicata.

■ Appellants cite the United States Supreme Court's holding in *Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68

---

**3.** The record indicates that the following discussion took place:

> The Court: As the parents, are you ready to proceed? As the mother, are you ready?
> Mrs. Rhoades: (Nods head)
> The Court: I can't hear you.
> Mrs. Rhoades: Yes, sir.
> The Court: Are you, as the father, ready?
> Mr. Rhoades: Yes, sir.
> The Court: Both of you, of course, understand that you have a right to have an

attorney to represent you in this matter, and are you choosing to represent yourself in this case?
> Mr. Rhoades: We are.
> Mrs. Rhoades: We are.

Although this discussion did inform the Rhoades that they had a right to be represented by counsel in the termination proceeding, it did not inform them that an attorney would be appointed to represent them if they could not afford one.

L.Ed. 362 (1923), for the proposition that the federal district court did not have jurisdiction to hear this § 1983 case. In *Rooker,* the Supreme Court held, without a full discussion, that in certain cases a federal district court has no jurisdiction to vacate or nullify a state court judgment. However, subsequent decisions by this Court have given direction to the rule set forth in *Rooker.* In *Gresham Park Community Organization v. Howell,* this Court held that "[w]here a party asks a federal court to declare a state court judgment null and void, we should consider this as praying for an injunction enjoining its enforcement." *Gresham Park Comm. Organ. v. Howell,* 652 F.2d 1227, 1236, (5th Cir.1981). The Court went on to hold that if the action is classified as praying for an injunction, the district court does have jurisdiction. That is to say, the court found a distinction between seeking appellate review of a state court's judgment in federal district court and seeking an injunction enjoining enforcement of a state court judgment. In the former situation, no jurisdiction exists since the district court has no appellate jurisdiction over state judgments, whereas in the later situation, jurisdiction does exist since the district court is not required to exercise an appellate function. *Id.* at 1235–36.

In the instant case, Rhoades sought a declaration that the state court's judgment was null and void. Consequently, this court construes the complaint to pray for an injunction, which invoked the federal district court's jurisdiction. Moreover, once the *Rooker* hurdle is cleared, it is apparent that this case falls squarely within the federal question jurisdiction of the federal courts as set forth in 28 U.S.C. §§ 1343(3), (4).

Rhoades' initial § 1983 complaint requests that the district court declare the state court's judgment null and void and enjoin the state from seeking to enforce its judgment. Rhoades alleged that the proceeding itself constituted a deprivation of her constitutional rights since she was not

provided counsel. Significantly, Rhoades was not claiming that the district court should review the state court's rulings on the substantive issues involved in the termination proceeding. To the contrary, Rhoades simply maintained that the entire proceeding, quite apart from the substantive issues of the termination proceeding, was constitutionally defective. When Rhoades complaint is viewed in this light, it is clear that it falls within the provisions of § 1983 and its jurisdictional counterpart. *See* 28 U.S.C. § 1343(3). Simply put, Rhoades seeks to obtain redress for the "... deprivation, under color of ... State law, ... of [a] right ... secured by the Constitution of the United States...." *Id.* Consequently, this Court holds that the district court did have jurisdiction.

■ Appellant also avers that the district court erred in refusing to abstain from exercising its jurisdiction under the principles of *Younger v. Harris,* 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). The *Younger* doctrine, which counsels federal-court abstention when there is a pending state proceeding, commendably seeks to curtail federal interference with the state's judicial process. Although *Younger* involved ongoing state criminal proceedings, the Supreme Court has held that the principles of comity involved in *Younger* apply to ongoing civil proceedings in which the state has an important interest. *Huffman v. Pursue, Ltd.,* 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975). Moreover, the Supreme Court has advised abstention in cases involving an ongoing state termination proceeding similar to the instant proceeding. *See Moore v. Sims,* 442 U.S. 415, 99 S.Ct. 2371, 60 L.Ed.2d 994 (1979). However, unlike the situation in *Moore v. Sims,* which involved an action to enjoin an *ongoing* state termination proceeding, the present action involves a final judgment issued by the state district court that is no longer appealable in the state courts.[4] Hence, this Court concludes that

---

**4.** It is significant that Rhoades attempted to appeal the state district court's judgment, but was precluded from doing so due to her failure to comply with the filing requirements of the

Texas Rules of Civil Procedure. In *Huffman v. Pursue,* 420 U.S. 592, 608, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975), the Supreme Court held that abstention was appropriate when a party

the principles of comity implicated in *Younger* are not involved, and, therefore, the district court did not err in refusing to abstain.

■ In appellants' final allegation that the district court erred in refusing to dismiss this case, appellants contend that the doctrine of res judicata bars the instant proceeding. In *Allen v. McCurry,* 449 U.S. 90, 101 S.Ct. 411, 66 L.Ed.2d 308 (1980), the Supreme Court noted that "[u]nder res judicata, a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." *Id.* 101 S.Ct. at 414. However, the application of res judicata has been limited to issues of fact or law necessary to the decision in the prior judgment. In other words, the allegedly barred claim must arise out of the same nucleus of operative facts involved in the prior litigation. *See Southern Jam, Inc. v. Robinson,* 675 F.2d 94, 96 (5th Cir.1982).

■ In the instant proceeding, Rhoades is not attempting to relitigate any of the substantive issues underlying the state court's judgment. That is to say, Rhoades does not attack the state court's decision on the merits of the termination issue through defenses or claims that arise out of the relationship between her and her daughter. As noted previously, Rhoades maintains that the proceeding itself deprived her of due process since she was not provided counsel. Moreover, it would appear to be manifestly unjust to refuse to hear Rhoades' claim of right to counsel on the grounds that she should have raised it before the state court. Implicit in her allegation of right to counsel is the notion that she lacked the ability to understand both the nature of her constitutional rights and the procedural prerequisites necessary to assert them since she was not afforded the guiding hand of counsel. Moreover, the record does not indicate that Rhoades was informed that she had a right to court-appointed counsel. The district court judge merely informed Rhoades that

she had a right to have an attorney represent her. This instruction did not inform Rhoades that an attorney would be appointed to represent her if she could not afford one. In light of these circumstances, this Court finds no error in the district court's refusal to apply res judicata to the case at bar.

### III.

■ In response to Rhoades' motion for summary judgment, the federal district court vacated the state district court's judgment and enjoined the state from attempting to enforce its judgment. Appellants maintain that the federal district court erred in granting the summary judgment since material issues of fact were in dispute. Concluding that the material fact issue of indigency was in dispute, this Court reverses the district court's granting of the summary judgment and remands this case to the district court for a hearing to determine the issue of Rhoades' indigency.

In reviewing the district court's granting of the summary judgment, this Court must view the evidence and the inferences to be drawn from the evidence in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Marshall v. Victoria Transportation Co.,* 603 F.2d 1122, 1123 (5th Cir.1979); and *Vetter v. Frosch,* 599 F.2d 630, 631–32 (5th Cir.1979). When viewed in this light, this Court must determine whether there is any genuine issue as to any material fact and whether the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). Additionally, even if the non-movant fails to respond to the motion for summary judgment, this Court has held that summary judgment is inappropriate on "those issues whose decision depends on resolution of evident factual disputes...." *White v. Thomas,* 660 F.2d 680, 683 (5th Cir.1981).

had intentionally ignored the state appellate process to file suit in federal court. However, in this case, Rhoades attempted to appeal, but,

probably due to her lack of counsel, did not comply with the rules of filing.

Although Rhoades attached as an exhibit to her motion for summary judgment an affidavit stating that neither she nor her husband had any income at the time of trial, other evidence in the record tends to dispute this allegation. For example, in her affidavit in support of her motion for summary judgment, Rhoades states that the testimony at trial accurately reflects her financial condition. However, the state district judge, in his sworn affidavit attached to his February 1, 1982, motion to reconsider, makes the following statement concerning the testimony at trial:

> At trial, Mr. Rhoades stated that he was then employed and had been employed at various places prior to his then present self-employed position. Mrs. Rhoades, the sole plaintiff now remaining in this suit, testified as to her employment. She also testified as to her husband's employment by Georgia-Pacific.
>
> . . . .
>
> Again, the matter of indigency for purposes of the appointment of counsel simply was not raised by the parties *or by the evidence presented to me.* The evidence during the entire proceeding and conduct of the parents incident to the securing of counsel indicated that they probably were *not indigent.* (emphasis added)

Clearly, these statements, at the least, put in issue the question of Rhoades' indigency. Moreover, this evidence could be, and should have been, considered by the district judge in determining whether summary judgment was proper. *Munoz v. International Alliance of Theatrical State Emp. and Moving Picture Machine Operators of U.S. and Canada,* 563 F.2d 205 (5th Cir.1977). Admittedly, other circumstances in the record support her claim of indigency, however, this Court, in reviewing the district court's granting of the summary judgment is not permitted to assess the probative value of any of the evidence. This Court must only decide whether a genuine issue of material fact exists "so as to insure that factual issues will not be determined without the benefit of the truth-seeking procedures of a trial." *Southern Distributing Co., Inc. v. Southtown, Inc.,* 574 F.2d 824, 826 (5th Cir.1978). Since the material fact of indigency was in dispute, this Court must reverse the district court's judgment and remand this case for an evidentiary hearing.

## IV.

Appellants contend that the district court erred by certifying a class action. As noted previously, the district court certified a class action composed of all indigent parents whose children were, are, or will be the subject of proceedings initiated by the Texas Department of Human Resources to obtain temporary or permanent custody of the children. Having certified the class action, the district judge proceeded to analyze the equal protection claim. Although the district court concluded that the equal protection clause was ". . . implicated in proceedings affecting parental rights . . . ," the district court held that "[s]ince each case must be determined on its facts, summary judgment on the equal protection claims of the class should be denied." This Court holds that the district court erred in certifying the class.

In order to determine the propriety of the district court's certification of the class, it is necessary to analyze the nature of the right involved in this case. As class representative, Rhoades maintains that "[t]he equal protection clause of the 14th Amendment creates an *absolute* right to the appointment of counsel for all indigent parents whose children are the subject of custody or parental termination proceedings initiated by the State of Texas." (emphasis added). Rhoades' argument runs contra to the Supreme Court's decision in *Lassiter v. Department of Social Services of Durham County,* 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981). Although *Lassiter* dealt only with the due process clause of the fourteenth amendment, the Court emphatically refused to hold that "the Constitution requires the appointment of counsel in every parental termination proceeding." *Lassiter,* 101 S.Ct. at 2162. *Lassiter* does

not stand for the proposition that all indigent parents are entitled to court-appointed counsel when the state moves to terminate their parental rights. To the contrary, *Lassiter* simply states that in each given case the indigent parent is entitled to a state court determination as to whether the competing interest set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) weigh in favor of the appointment of counsel. *Lassiter,* 101 S.Ct. at 2159. Thus, the fact that a class of indigent parents has been subjected to custody proceedings without court-appointed counsel would not trigger automatically the right to classwide relief. *Lassiter* does not create a classwide right, it merely gives each indigent parent the right to have a determination made as to the need for counsel under the balancing test set forth in *Eldridge.*

A review of the district court's judgment demonstrates that certification of a class action was unnecessary. After noting that the members of the class "may have a right to the appointment of counsel . . . ," the trial court held that "[t]he [state] trial court should hold hearings to determine indigency and the need for counsel . . . ." It is evident that the district court's judgment does nothing more than restate the rule set forth in *Lassiter.* Under *Lassiter,* an indigent parent is entitled to a state court determination of right to counsel. The district court's restatement of the *Lassiter* rule in the context of a class action does not create or add to the right recognized in *Lassiter.* This right exists on an individual basis and is not susceptible to an across-the-board classwide determination. The infinite variation of facts possible in each case requires adherence to the case-by-case analysis announced in *Lassiter.* Hence, this Court concludes that the district court erred in certifying a class action.

## CONCLUSION

This Court holds that the district court did have jurisdiction in this case. Additionally, the district court did not err in refusing to abstain or apply the doctrine of res judicata. However, since the district court improperly granted a summary judgment, this Court reverses the district court's judgment and remands this case for an evidentiary hearing. Moreover, this Court holds that the district court erred in certifying a class action.

REVERSED AND REMANDED.