663 F.2d 814
 108 L.R.R.M. (BNA) 3038, 92 Lab.Cas. P 13,120
 RAINBOW GLASS COMPANY, Appellant,
v.
LOCAL UNION NO. 610, Affiliated with the International
Brotherhood of Teamsters, Chauffeurs, Warehousemen
and Helpers of America, Appellee.
 No. 81-1110.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Nov. 9, 1981.
Decided Nov. 17, 1981.
 
 Suelthaus, Krueger, Cunningham, Yates & Kaplan, P. C., Lawrence P. Kaplan, St. Louis, Mo., for appellant.
 Clyde E. Craig, Barbeau A. Roy, St. Louis, Mo., for appellee.
 Before HENLEY and ARNOLD, Circuit Judges, and NICHOL,* Senior District Judge.
 HENLEY, Circuit Judge.
 
 
 1
 Rainbow Glass Company (the Company) brought suit to vacate an arbitration award on the ground that the arbitrator exceeded his authority. The district court[1] granted summary judgment for appellee Local 610 on its counterclaim seeking enforcement of the arbitrator's award. The Company now appeals from this order. We affirm.
 
 
 2
 The Company and Local 610 negotiated and executed a collective bargaining agreement effective August 1, 1979 through July 31, 1982.[2] Article VIII, Section 7 of the seniority provisions of this agreement provides:
 
 
 3
 All new employees shall be on a probationary period for the first thirty-one (31) calendar days of employment ....
 
 
 4
 Any new employee must work thirty (30) cumulative work days within any ninety (90) (day) calendar period and upon completion thereof, shall be considered a regular employee and placed on the seniority list ....
 
 
 5
 During negotiation of this bargaining agreement, the Company proposed discounted wage rates for probationary employees. The parties agreed on the following provision, which is contained in the current agreement:
 
 ARTICLE IX WAGES
 
 6
 New employees hired as probationary employees with the purpose of adding such employee to the seniority list may be paid seventy percent (70%) of the hourly rate for the first twelve (12) months; eighty percent (80%) of the hourly rate for the second twelve (12) months; and, after two (2) years' employment must be paid the full hourly rate of pay.
 
 
 7
 Casual employees that the Company does not specifically indicate will be on probation, with the prospect of gaining seniority must be paid the prevailing hourly rate of pay ....
 
 
 8
 Pertinent language concerning seniority rights in the previous bargaining agreement, which was effective from August 1, 1976 through July 31, 1979, provided that "beginners shall obtain seniority after thirty (30) days of employment."
 
 
 9
 The grievant in the instant case, Edward Copeland, filed a grievance on January 22, 1980,[3] alleging that the Company had violated the provisions of Article VIII, Section 7 of the current agreement and claiming seniority from November 12, 1979.[4] Copeland had been employed by the Company as a temporary driver since the early 1960's. In this capacity he worked a few days at a time when the Company needed an extra driver or a replacement for a regular, full-time employee. In August, 1978 he began working steadily and was paid the full wage rate specified in the collective bargaining agreement in effect at the time. The Company, however, never paid any fringe benefits for Copeland.[5]
 
 
 10
 At the grievance hearing and in a post-hearing brief, the Union relied on the Article VIII, Section 7 seniority provision to support Copeland's claim of seniority. The Company relied on the Article IX wage provisions to support its claim that Copeland was a casual employee not entitled to seniority.
 
 
 11
 The arbitrator initially noted that the provisions cited by the Company and Local 610 were conflicting, but concluded that it was unnecessary to resolve the apparent conflict because "the quoted sections of Article VIII and Article IX refer and apply only to those employees hired after the effective date of the current Collective Bargaining Agreement ...." After pointing out that Copeland was not a "new employee" on the effective date of the current agreement and that the quoted provisions consequently were not determinative of his seniority rights, the arbitrator stated: "(I)f Grievant did, in fact, have seniority rights, such rights had to be gained prior to the current contract because there is no provision granting Grievant such rights under the current agreement ...." The arbitrator added:
 
 
 12
 In August of 1978, clearly the status of Grievant's employment changed from a part time employee to a full time employee. Thus, to that extent, at least, Grievant was a 'beginner' ... and came under the language of Article XXI (the seniority provision in the previous bargaining agreement). Thus, after 30 days, Grievant was entitled to be placed on the seniority list, even though he was considered a 'temporary employee' for fringe benefit rights, and did not receive same.[6]
 
 
 13
 On appeal from the order of the district court enforcing the arbitration award, the Company contends that the court erred in upholding the award because it was not drawn from the essence of the current collective bargaining agreement, but rather, was based on an expired labor contract. In support of its position, the Company asserts that the arbitrator's statement that "there is no provision granting Grievant (seniority) rights under the current agreement" in effect decided the question of seniority rights against Copeland. Appellant argues that the arbitrator could not award seniority rights to Copeland under the prior labor agreement because he had the authority to act only under the current bargaining agreement, which he was charged to interpret. Additionally, the Company contends that an award under the previous labor agreement is unenforceable because the parties are no longer bound by the terms of that agreement, and the term on which the arbitrator's award is based was deleted during negotiations of the current agreement.
 
 
 14
 Appellee Local 610 initially notes that the arbitrator was empowered under the current contract to resolve differences "as to the meaning or application of the provisions" of the current contract. Appellee's argument that the arbitrator's award drew its essence from the current bargaining agreement is concisely stated in one paragraph of its brief.
 
 
 15
 The Company fails to recognize ... the critical distinction recognized by the Arbitrator between the initial creation of Grievant's seniority rights under the prior agreement and the maintenance of those rights under the current agreement. When the Arbitrator found that 'there is no provision granting Grievant such rights under the current agreement' (emphasis added), he was precisely basing that conclusion on his analysis of language in the current agreement which addresses the initial accrual of seniority rights only in terms of new employees. Because in his view, the seniority provisions of the current agreement did not literally apply to Grievant, he was compelled to look to the terms of the prior agreement, under which Grievant's seniority first accrued, to determine the intent of the parties with respect to Grievant's present seniority rights under an agreement whose terms did not expressly speak to Grievant's situation.
 
 
 16
 In support of its position that the arbitrator's consideration of an expired collective bargaining agreement does not invalidate his award, Local 610 argues that it was necessary to examine extrinsic evidence, that is, the earlier contract, because the silence of the current agreement on a subject expected to be addressed in that agreement created an ambiguity.
 
 
 17
 Judicial review of an arbitration award is limited to a determination whether the arbitrator acted within the authority granted him by the collective bargaining agreement. Drivers & Helpers Local 554 v. Young & Hay Transportation Co., 522 F.2d 562, 567-68 (8th Cir. 1975). It is not within the scope of this court's review to pass upon the merits of the arbitrator's decision. Aircraft Mechanics Fraternal Ass'n v. Ozark Air Lines, Inc., 597 F.2d 1155, 1157 (8th Cir. 1979). Rather, the court must affirm the district court's order granting summary judgment on the union's counterclaim if the "arbitrator's award drew its essence from the collective bargaining agreement." Kewanee Machinery Division v. Local 21, International Brotherhood of Teamsters, 593 F.2d 314, 316 (8th Cir. 1979), citing United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960).
 
 
 18
 We conclude that the district court correctly held that "(t)he arbitrator did not err in basing his award upon the consideration of the prior collective bargaining agreement." Rainbow Glass Co. v. Local 610, 505 F.Supp. 81, 83 (E.D.Mo.1980).
 
 
 19
 Because a collective bargaining agreement is a generalized code covering the entire employment relationship and governing a myriad of cases, its draftsmen cannot anticipate all the contingencies and problems that may require resolution under the terms of the agreement. See International Union of UAW v. White Motor Corp., 505 F.2d 1193, 1197 (8th Cir. 1974), cert. denied, 421 U.S. 921, 95 S.Ct. 1588, 43 L.Ed.2d 789 (1975), quoting United Steelworkers v. Warrior & Gulf Navigation Co., 363 U.S. 574, 578-80, 80 S.Ct. 1347, 1350-51, 4 L.Ed.2d 1409 (1960). The gaps that naturally arise in the labor agreement may be filled by examining sources outside the four corners of the contract. See International Union of UAW v. White Motor Corp., supra, 505 F.2d at 1197. Such an examination is often essential to ascertain the intent of the parties under the current contract and determine their rights and obligations. Id.
 
 
 20
 In the instant case the silence of the current bargaining agreement on the question of Copeland's seniority rights rendered the intent of the parties on this matter ambiguous. Resort to the bargaining history here only heightens the ambiguity since the parties failed to discuss this issue during negotiations of that agreement. In his decision, the arbitrator noted that
 
 
 21
 (i)n the negotiation of the current contract, no discussion was had about Grievant's right to seniority. Neither the Company nor the Union brought up the subject. Either could have. The parties were evidently satisfied that Grievant was a 'temporary employee', not entitled to fringe benefit contributions. But the issue of his seniority rights have (sic) never been raised ....
 
 
 22
 Thus, it is clear that this situation is not one in which the parties considered the issue during contract negotiations and deliberately omitted it from the contract. In such a case, an arbitrator could not assume that the contract conferred a specific benefit, since "labor contracts generally state affirmatively" the conditions on which the parties agree. See Torrington Co. v. Metal Products Workers Local 1645, 362 F.2d 677, 681 (2d Cir. 1966).
 
 
 23
 Because the ambiguity created by the silence of the current bargaining agreement could not be resolved by examining the bargaining history in this case, the arbitrator resorted to other extrinsic evidence-the previous agreement-to determine Copeland's seniority rights under the current contract. From the circumstances occasioning the filing of the grievance, that is, the hiring of a new employee and the one day layoff of Copeland in January, 1980, the arbitrator could reasonably have concluded that the parties' failure to discuss this matter and include it in the labor contract was an inadvertent omission resulting from the absence of a situation that triggered worries about job security.
 
 
 24
 In the presence of these circumstances, we hold that the arbitrator could resort to the previous labor agreement to determine Copeland's rights under the new contract. See International Union of UAW v. White Motor Corp., supra, 505 F.2d at 1197-98. We note that nothing in the previous or current bargaining agreement imposed a time limitation on claims alleging violations of seniority provisions. More important is that the current agreement does not contain any express or implied bar against a determination of present seniority rights that vested under a prior contract. It is clear that if such rights accrued under the previous bargaining agreement between the parties, they did not terminate when the earlier contract expired on July 31, 1979. See Richardson v. Communications Workers, 443 F.2d 974, 979 (8th Cir. 1971) (subsequent history omitted).
 
 
 25
 In sum, although the arbitrator resorted to the prior, expired bargaining agreement, he nevertheless acted within the scope of his authority under the current contract to resolve a dispute concerning Copeland's seniority rights under that contract. See City Electric, Inc. v. Local 77, IBEW, 517 F.2d 616, 619 (9th Cir.), cert. denied, 423 U.S. 894, 96 S.Ct. 194, 46 L.Ed.2d 127 (1975).
 
 
 26
 Accordingly, we affirm the judgment of the district court.
 
 
 
 *
 The Honorable Fred J. Nichol, Senior District Judge, District of South Dakota, sitting by designation
 
 
 [1]
 The Honorable H. Kenneth Wangelin, Chief Judge, United States District Court for the Eastern District of Missouri
 
 
 [2]
 The agreement provides for a binding grievance and arbitration procedure
 
 
 [3]
 In his decision the arbitrator noted the circumstances surrounding the filing of the grievance
 In early January of 1980, a casual employee (also a driver) requested a regular job. The Company refused ... and he resigned .... The Company employed another driver. Grievant felt that his job was threatened and his position jeopardized when the Company took the new employee into the warehouse and taught him warehouse procedures even though other drivers had not been so treated. Furthermore, Grievant was laid off one day and the newly hired employed (sic) was retained .... (Although Grievant had been regularly employed since August, 1978,) (n)ot until he believed his job was in jeopardy did he feel the need to file a grievance ....
 
 
 [4]
 The arbitrator's decision states:
 The date of November 12, 1979, was decided upon by Grievant as it was the 30th working day prior to January 22, 1980, the date his grievance was filed. Certainly there is no contractual basis for such date, but giving due consideration to the equities involved, (most probably the equities and rights of other members of the bargaining unit), Grievant and the Union request such date.
 
 
 [5]
 The agreement in effect at that time required the employer to make certain fringe benefit contributions for each employee who had been on the payroll for thirty or more days, but expressly excluded temporary employees
 
 
 [6]
 Expounding on this point, the arbitrator stated:
 The fact that no fringe benefit contributions were made on behalf of Grievant is immaterial .... The obligation to make such contributions was determined by different provisions of the Collective Bargaining Agreement than the provisions giving rise to seniority rights.