**Ben SMITH, Plaintiff-Appellant,**

v.

**KERRVILLE BUS COMPANY, INC.,
Defendant-Appellee.**

No. 82–1058.

United States Court of Appeals,
Fifth Circuit.

July 18, 1983.

Rehearing and Rehearing En Banc
Denied Sept. 7, 1983.

Les Mendelsohn, Barry H. Beer, San Antonio, Tex., for plaintiff-appellant.

Shelton Padgett, J. Joe Harris, San Antonio, Tex., for defendant-appellee.

Before CLARK, Chief Judge, THORNBERRY and POLITZ, Circuit Judges.

POLITZ, Circuit Judge:

Benjamin H. Smith filed suit in state court under § 301 of the Labor Management Relations Act of 1947 (LMRA), 29 U.S.C. § 185, alleging that his employment was wrongfully terminated by Kerrville Bus Company (Kerrville). Kerrville removed the action, then sought and secured summary judgment rejecting Smith's claims. On the record before us, being unpersuaded of the absence of any dispute as to a material fact and of Kerrville's entitlement to judgment as a matter of law, we reverse and remand.

### Facts

Smith drove a bus for Kerrville for 26 years before his termination on July 2, 1979, for "mishandling company property," specifically, failing to report cash fares. After his dismissal Smith sought assistance from the Drivers' Committee, the bus drivers' collective bargaining representative. Although several Committee members interceded on Smith's behalf, Kerrville refused to reinstate him. This action ensued.

At the time of Smith's discharge, a rather exiguous collective bargaining agreement existed between Kerrville and the Drivers' Committee. Under its terms, the employees were assured of certain routes, or "runs," assigned pursuant to seniority bids, specific rates of regular and holiday pay calculated according to seniority, bonuses and allowances for meals and other expenses, and sick leave. With the exception of new employees who failed to complete a 90-day probationary period, all employees earned vacation benefits, again computed according to time in grade.

Aside from a provision for biannual meetings of the Drivers' Committee for the purpose of disposing "of accident and bonus questions, and any other grievances," the collective bargaining agreement was silent with respect to formal grievance or arbitration mechanisms. It was likewise silent as to grounds for employee discharge.

There was no express reference in the bargaining agreement to the Drivers Rule Book, a manual of safety and disciplinary rules promulgated by the employer and distributed to all employees. The Rule Book expressly states: "A Driver may be disciplined or discharged for violation or infraction of Company rules ...", and reiterates throughout that violation of a specific rule "will be grounds for disciplinary action up to and including discharge." The Rule Book also declares that: "Acts of dishonesty are cause for dismissal."

### Legal Analysis

Kerrville takes the position that since the collective bargaining agreement contains no express provision relating to discharge, under Texas law it may fire Smith at will. Apparently accepting the validity of this rationale, the district court granted Kerrville's motion for summary judgment.[1] On

---

1. In granting summary judgment, the district court did not provide any written or oral findings of fact or conclusions of law. From the court's colloquy with counsel at hearing, and its request for the lower court's ruling in *Lowe v. Pate Stevedoring Co.*, 558 F.2d 769 (5th Cir.

appeal, Smith argues that the existence of a just cause restriction on the employer's absolute power to discharge may be implied from the agreement's abbreviated grievance procedure, either alone or in conjunction with the specific grounds for dismissal or discipline set forth in the Drivers Rule Book.

■ Absent a limiting provision in the employment contract or collective bargaining agreement, an employer may dismiss employees at will. *Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 92 S.Ct. 1562, 32 L.Ed.2d 95 (1972); *United States Steel Workers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 80 S.Ct. 1347, 4 L.Ed.2d 1409 (1960). Here, the labor contract is silent; it neither reserves to management plenary rights to discharge with or without cause, nor does it stipulate that discharge may be effected only for "good" or "just" cause. Thus the threshold issue in this case is whether the terms and essential logic of the collective bargaining agreement, construed in light of the history of the parties' relationship, warrant the imposition of a just cause restriction on Kerrville's termination authority.

### A. Standard of Review

■ The inquiry whether a just cause limitation on dismissals may be implied from the language of a collective bargaining agreement presents a question of law for the court, *see Lowe v. Pate Stevedoring Co.*, 558 F.2d 769 (5th Cir.1977), while the existence of just cause itself raises a factual issue. *Nunez v. Superior Oil Co.*, 572 F.2d 1119 (5th Cir.1978) (*citing Lowe v. Pate Stevedoring Co.*). *See also Scott v. Anchor Motor Freight, Inc.*, 496 F.2d 276 (6th Cir.), *cert. denied*, 419 U.S. 868, 95 S.Ct. 126, 42 L.Ed.2d 107 (1974). *But see Scott v. Riley Co.*, 645 F.2d 565 (7th Cir.1981); *Whitten v. Anchor Motor Freight, Inc.*, 521 F.2d 1335 (6th Cir.1975), *cert. denied*, 425 U.S. 981, 96 S.Ct. 2188, 48 L.Ed.2d 807 (1976) (where contract stipulated that particular offense

1977), we can nonetheless infer that the court determined as a matter of law that the omission of formal grievance and arbitration clauses

was just cause for termination, no jury issue as to propriety of dismissal for commission of this offense).

Our review of the district court's grant of summary judgment is guided by Fed.R. Civ.P. 56. Rule 56(c) authorizes summary judgment only where "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law." In gauging the propriety of a grant of summary judgment, we invoke the same legal standards as those which bind the district court. *Nicholas Acoustics & Specialty Co. v. H & M Construction Company, Inc.*, 695 F.2d 839 (5th Cir.1983); *Impossible Elec. Tech. v. Wackenhut Prot. Systems*, 669 F.2d 1026 (5th Cir.1982). We must view the evidence in the light most favorable to the opposing party, resolving all reasonable doubts concerning the facts in his favor. *Breen v. Centrex Corp.*, 695 F.2d 907 (5th Cir.1983). We may not weigh the probative value of the evidence adduced, or decide any factual issues we might discern in the record, but are instead limited to a determination of whether a genuine issue of material fact remains for disposition " 'so as to insure that factual issues will not be [decided] without the benefit of the truth seeking procedures of a trial.' " *Id.* at 910 (*quoting from Southern Distributing Co. v. Southdown, Inc.*, 574 F.2d 824, 826 (5th Cir.1978)). That it appears likely that the movant will prevail at trial, or that its facts are ostensibly more plausible, is no reason to grant summary judgment. *Jones v. Western Geophysical Co. of America*, 669 F.2d 280 (5th Cir.1982). Nor need the nonmovant "respond to the summary judgment motion unless and until the movant has properly carried its burden." *Anthony v. Petroleum Helicopters, Inc.*, 693 F.2d 495, 497 (5th Cir.1982).

### B. Implication of a "Just Cause" Bar to Discharge

■ We are mindful, as we begin our analysis of the issue presented by the case at bar,

precluded its implication of a covenant on the part of Kerrville not to terminate employees without cause.

that judicial interpretation of silence in a document . . . is always a tricky and controversial undertaking. . . . This is especially true with labor contracts, since their formation is typically characterized by intense bargaining and the final contract usually represents hard-fought negotiations and compromises. Quite often, employers and unions exchange numerous quid pro quos, giving clauses and rights in direct exchange.

*N.L.R.B. v. South Central Bell Telephone Co.,* 688 F.2d 345, 352–53 (5th Cir.1982). Labor contracts in general state affirmatively the conditions on which the parties agree. *Id.* at 353 (*citing Torrington Co. v. Metal Prods. Workers Local 1645,* 362 F.2d 677 (7th Cir.1966)); *Rainbow Glass Co. v. Local Union No. 610,* 663 F.2d 814 (8th Cir.1981). Contractual silence, by the same token, is not dispositive of the intent of the parties. *N.L.R.B. v. South Central Bell Telephone Co.; Amcar Division, ACF Indus., Inc. v. N.L.R.B.,* 592 F.2d 422 (8th Cir.1979). As the Supreme Court has recognized, a collective bargaining agreement may not anticipate every situation that may arise between employer and employee. *United Steel Workers of America v. Warrior & Gulf Navigation Co.; see Cronin v. Sears, Roebuck & Co.,* 588 F.2d 616 (8th Cir.1978). A collective bargaining agreement, in the Court's estimation:

is more than a contract; it is a generalized code to govern a myriad of cases which the draftsman cannot wholly anticipate. . . . The collective agreement covers the whole employment relationship. It calls into being a new common law— the common law of a particular industry or of a particular plant. . . . one observer has put it:

"... [I]t is not unqualifiedly true that a collective-bargaining agreement is simply a document by which the union and employees have imposed upon management limited, express restrictions of its otherwise absolute right to manage the enterprise, so that an employee's claim must fail unless he can point to a specific contract provision upon which the claim is founded.

There are too many people, too many problems, too many unforeseeable contingencies to make the words of the contract the exclusive source of rights and duties. One cannot reduce all the rules governing a community like an industrial plant to fifteen or even fifty pages. Within the sphere of collective bargaining, the institutional characteristics and the governmental nature of the collective-bargaining process demand a common law of the shop which implements and furnishes the context of the agreement. We must assume that intelligent negotiators acknowledged so plain a need unless they stated a contrary rule in plain words."

*United Steelworkers of America v. Warrior's Gulf Navigation Co.,* 363 U.S. at 578–80, 80 S.Ct. at 1350–52 (*quoting* from Cox, Reflections Upon Labor Arbitration, 72 Harv.L.Rev. 1482, 1498–99 (1959)).

Because a collective bargaining agreement is designed to regulate virtually all facets of the employer-employee relationship, and is subject to federal labor law, the construction and application of its terms cannot be narrowly confined by ordinary principles of contract law. *See Transportation-Communication Employees Union v. Union Pacific Railroad,* 385 U.S. 157, 87 S.Ct. 369, 17 L.Ed.2d 264 (1966); *N.L.R.B. v. L.B. Priester,* 669 F.2d 355 (5th Cir.1982). Thus the provisions of a labor contract may be more readily expanded by implication than those of contracts memorializing other transactions. *Local 205, United Electrical, Radio and Machine Workers of America v. General Electric Co.,* 172 F.Supp. 53 (D.Mass.1959). *See generally* R. Gorman, Basic Text on Labor Law 540–41 (1976 ed.).

In instances where the language of a collective contract does not explicitly prohibit dismissal except for just cause, arbitrators typically infer such prohibitions from seniority clauses or grievance and arbitration procedures. Summers, Individual Protection Against Unjust Dismissal: Time For A Statute, 62 Va.L.Rev. 481, 499–500 (1976). *See Shearson Hayden Stone, Inc. v. Liang,* 653 F.2d 310 (7th Cir.1981); Note,

Protecting At-Will Employees Against Wrongful Discharge, the Duty to Terminate Only in Good Faith, 93 Harv.L.Rev. 1816, 1816 (1980); Note, Individual Rights for Organized and Unorganized Employees Under the National Labor Relations Act, 58 Tex.L.Rev. 991, 994 (1980). Inherent in the body of arbitral common law which has evolved in this context is a marked awareness of the harshness of discharge, and an adherence to the principle that seniority, grievance, arbitration, and other provisions that reflect the contracting parties' tacit acceptance of the employees' right to some measure of job security, pretermit discharge without good cause. *See RLC & Son Trucking, Inc.,* 70 LA 600 (1978); *Peerless Laundry Co.,* 51 LA 333 (1968); *Keeney Mfg. Co.,* 40 LA 976 (1963); *Pacific Telephone & Telegraph Co.,* 36 LA 503 (1960). *See also* M. Trotta, Arbitration of Labor-Management Disputes 230–42 (1974); *Summers.*[2] One arbiter summarizes this development as follows: "The weight of arbitral opinion is that a standard of just cause may be imposed upon disciplinary actions even though such a standard is not spelled out in the agreement." *Pacific Telephone & Telegraph Co.,* 36 LA at 505.

Several courts, in reviewing an arbitral finding of a "just cause" impediment to discharge, have determined that the arbitrator properly circumscribed the employer's power to fire by implying an objective limitation from the terms of the labor contract, as amplified by evidence of the parties' intentions. *See e.g., Shearson Hayden Stone, Inc. v. Liang* (arbitrator empowered to determine that agreement to arbitrate disputes concerning employee discharges implies just cause requirement); *United Food & Commercial Workers International, AFL–CIO, Local Union No. 634 v. Gold Sausage Co.,* 487 F.Supp. 596 (D.Colo.1980) (upholding arbitrator's implication, by reference to seniority clause governing layoffs, rehiring, transfers and promotions, and the proscription of discharge for refusing to cross or work behind picket lines, of contractual removal of employer's unilateral right to terminate without cause. The court relied in part on the Supreme Court's disapprobation of the exclusion from arbitration of any grievance, including those stemming from discharge); *Local 205, United Electrical, Radio and Machine Workers of America v. General Electric Co.* (after evaluating labor contract's machinery for the adjustment of grievances relating to "dismissal for cause other than layoffs for lack of work" against historical background which injected meaning in this phrase, the court declined to disturb the arbitral finding that the contract permitted dismissal only for reasonable or objective cause). *See also Monaghan v. Central Vermont Ry., Inc.,* 404 F.Supp. 683 (D.Mass.1975) (enforcement of National Railroad Adjustment Board's reinstatement order, holding that Board's implication of "just cause" stricture from contractual grievance process did not modify or amend the labor contract). Similarly, the courts examine the contractual language and the parties' understanding thereof, as manifested by their conduct and the common law of the plant or shop, in deciding whether a just cause restriction on management's dismissal power is embedded in the terms of the collective bargaining agreement. *See, e.g., Lowe v. Pate Stevedoring Co.; Boone v. Armstrong Cork Co.,* 384 F.2d 285 (5th Cir.1967); *Young v. Southwestern Bell Telephone Co.,* 309 F.Supp. 475, 479 (E.D.Ark.1969), *aff'd,* 424 F.2d 256 (8th Cir.1970).

In *Lowe,* we upheld the district court's finding of an implied just cause provision, stating that this " 'limitation upon the employer's right to discharge its employees should be inferred as a part of the basic fabric of the collective bargaining agreement.' " 558 F.2d at 771 n. 3 (quoting from district court's unpublished opinion). Notwithstanding the inclusion of an arbitration

**2.** Courts are not bound by arbitral rulings, nor are the arbitrators themselves obliged to follow the rule of *stare decisis, Lowe v. Pate Stevedoring Co.* Though we attach no substantive weight to these rulings in arriving at a decision on the merits, we believe that they serve as reliable indicators of the state of the common law of industrial relations in the area of wrongful discharge.

clause in the agreement, both the trial and appellate courts relied solely on a union hiring hall arrangement in circumscribing management's right to discharge.

Detailed provisions in labor contracts for the processing of grievances arising from employee terminations may, in some circumstances, justify the implication of a just cause requirement. *Boone v. Armstrong Cork Co.* Without deciding the issue, we opined in *Boone* that a grievance procedure, coupled with clauses providing for seniority rights and permissive dismissals of probationary employees, might be read to proscribe:

> the termination of an employee who had established seniority without "just cause," "reasons therefor," or designation of certain conduct "warranting discipline," and that the company may be required, through the grievance procedure, to justify such terminations.

384 F.2d at 291 n. 8.

In an opinion adopted in its entirety by our colleagues of the Eighth Circuit, the trial court refused to imply a just cause requirement where the collective bargaining agreement dealt expressly with the effect of tenure on employee terminations. *Young v. Southwestern Bell Telephone Co.* Employees with more than three years' service were accorded the right of pre-dismissal arbitration at the final level of the contract's grievance machinery, whereas those employed less than three years could pursue only the first two levels prior to discharge. That the older employees alone could compel arbitration prompted the court to conclude that the employer retained the ultimate authority to discharge individuals with less than three years' service after granting them access to the initial levels of the grievance process. For purposes of discussion, however, the court assumed that:

> if ... an employer and a labor union enter into a collective bargaining agreement giving large consideration to seniority and length of service but which is

silent as to the employer's right to hire and fire, there may properly be read into the contract an implied covenant not to discharge an employee except for cause. 309 F.Supp. at 478.

### C. The Case at Bar

■ Focusing on the collective bargaining agreement presently before us, we note first that the allocation of work assignments, pay, vacation, and sick leave are controlled by length of service. Probationary employees could not collect accrued vacation pay upon dismissal or resignation; those with more than 90 days' service could do so. Finally, the Drivers' Committee was required to convene every six months to handle accident and bonus questions or "any other grievances," presumably including those relating to discharge.[3] When viewed in the aggregate, these rudimentary guarantees furnish some, albeit minimal, degree of security for Kerrville's employees. To hold as a matter of law that management could, at its sole discretion, terminate an employee without cause would in effect allow it the unqualified power to avoid contractually mandated rights and benefits. Mindful that we are bound to exercise a reasoned flexibility in construing the terms of a labor contract, *see Capitol-Husting Co., Inc. v. N.L.R.B.,* 671 F.2d 237 (7th Cir.1982); *N.L.R.B. v. Electra-Food Machinery, Inc.,* 621 F.2d 956 (9th Cir.1980), we are loath to conclude, as a matter of law and undisputed fact, that no just cause limitation inheres in the Kerrville collective bargaining agreement.

Because another relevant document refers specifically to discipline and discharge, we need not decide whether the language of the labor contract alone militates against a legal conclusion that management surrendered its traditional prerogative to fire at will. By proscribing various forms of conduct in the Drivers Rule Book, Kerrville imparted fair notice to its employees that infraction of any rule delineated therein

---

**3.** According to the Drivers Rule Book, failure to comply with the rule prescribing appropriate conduct in case of an accident is a ground for discharge, as is the infraction of any of the various safety or disciplinary rules.

would constitute sufficient cause for discharge or discipline. Given the parties' understanding that certain conduct would furnish cause for termination, it is reasonable to infer that any discharge would be for cause. Before the Drivers Rule Book may be considered as a source for implying a just cause restriction, however, we must determine whether it may be deemed a part of the employment agreement between Smith and Kerrville.

■ It is well-established that § 301 must be broadly construed to encompass any agreement, written or unwritten, formal or informal, which functions to preserve harmonious relations between labor and management. *See Retail Clerks Int'l Ass'n v. Lyons Dry Goods, Inc.*, 369 U.S. 17, 82 S.Ct. 541, 7 L.Ed.2d 503 (1961); *District 2 Marine Engineers v. Grand Bassa Tankers, Inc.*, 663 F.2d 392 (2d Cir.1981); *Deaton Truck Line, Inc. v. Local Union 612*, 314 F.2d 418 (5th Cir.1962). That the summary of management's disciplinary and safety policies which comprises the Drivers Rule Book was not the object of a bilateral agreement between Kerrville and the Drivers Committee does not preclude its integration into the total labor contract. Where a written policy with respect to internal promotions was enforced by the employer and accepted by the union, we held that the policy was a vital component of the collective bargaining agreement. *Sanderson v. Ford Motor Co.*, 483 F.2d 102 (5th Cir.1973). In so holding, we looked to the industrial common law which governed the work place, observing that both labor and management regarded the policy as binding.

Although a mutual recognition of the Drivers Rule Book is not implicit in the terms of the collective bargaining agreement, *compare Sanderson v. Ford Motor Co.*, 483 F.2d at 112, there was evidence that the manual was significant to the maintenance of labor peace between Kerrville and its employees. Deposition testimony of Kerrville's president and vice-president of operations demonstrates that the drivers' compliance with company rules embodied in the manual was the quid pro quo for receipt of benefits secured by the bargaining agreement. Accordingly, we perceive an unresolved material issue of fact—the intent of the parties relative to incorporation of the Drivers Rule Book in their collective bargaining agreement. Since the record before us is not susceptible of summary disposition of this issue, we are not in a position to conclude as a matter of law that the bargaining agreement does not support the imposition of a just cause bar to at-will terminations. Summary judgment having been improvidently granted, we must reverse and remand for further proceedings.[4]

REVERSED and REMANDED for further proceedings consistent herewith.

CLARK, Chief Judge, dissenting:

No matter how favorably to Smith all the evidence in this record is viewed, it does not show me any just cause limitation on Kerr-

---

4. In light of our treatment of the question of implication, we do not reach the issue of whether Smith's conduct justified his discharge. Should a just cause provision ultimately be found to reside in the collective bargaining agreement, however, we must caution against a determination that such conduct provides just cause as a matter of law. In *Boone*, we suggested that an implied just cause restriction "might be a requirement of 'objectively justifiable cause,' defined as what a reasonable person would find sufficient." *Boone v. Armstrong Cork Co.*, 384 F.2d at 285 n. 9 (*quoting* from *Local 205, United Electrical, Radio and Machine Workers of America v. General Electric Co.*, 172 F.Supp. at 56, 58)). Then district judge Aldridge explained, "The phrase (good cause) creates an objective rather than a personal subjective test." *Local 205, v. General Electric Co.*, 172 F.Supp. at 56. *See Scott v. Riley Co.* The question of what a reasonable person might consider just cause should be entrusted to the jury. *Nunez v. Superior Oil Co.*, 572 F.2d 1119 (5th Cir.1978). We commented in *Lowe* that a broad variety of wrongful acts generally regarded as affording objective bases for termination defy classification as just cause per se, and concluded that it is for the trier of fact to weigh evidence of an employee's misconduct against proof of any mitigating circumstances which might tend to negate a finding of "just cause" within the ambit of the collective bargaining agreement.

ville's right to discharge Smith. This means the trial court correctly entered summary judgment. I respectfully dissent.

I agree with the majority that whether the Drivers Rule Book is incorporated into the collective bargaining agreement is an unresolved issue of fact. I also agree that, given the present procedural posture of this case, it must be assumed that it is. Having done so, the majority posits three grounds to justify its conclusion that a just cause limitation might be inferred from this agreement. First, the agreement grants seniority rights with respect to such matters as pay, vacation, and sick leave. For example, employees who have worked less than 90 days are differentiated from those employees who have worked more in determining whether the employee may collect accrued vacation pay. Second, the agreement provides: "The [Drivers] Committee will continue to meet every six (6) months to dispose of accident and bonus questions, and any other grievances." Third, the Drivers Rule Book, which we assume is incorporated into the agreement, proscribes specified forms of conduct.

None of the three premises makes the case. First, I see no logical connection between an employer's willingness to give senior employees greater economic benefits and his willingness to restrict his right to discharge at will employees. Certainly an employer may grant economic rewards without granting greater job security. It does not follow that, when an employer grants one benefit, he necessarily concedes another. For example, every employer has the right to discharge a dishonest employee whether that employee makes $5.00 an hour or $20.00 an hour. In my view, the majority relies on a non sequitur when it infers that the grant of seniority rights creates a right to discharge only for cause.

This court has never held that longevity of employment creates a just cause limitation. The contract clause involved in *Boone v. Armstrong Cork Co.,* 384 F.2d 285 (5th Cir.1967), stated that "an employee who has not established seniority (by accumulating sixty days of continuous service) 'may be dismissed * * * without regard to length of service or *reasons therefor ....* '" (emphasis supplied in *Boone*) By negative implication, it was conceivable that a senior employee could *not* be dismissed without re-

gard to the reasons therefor. But that critical language is missing in this case. Nowhere in all the documents that might possibly be considered part of the agreement did Kerrville obligate itself to give reasons for any employee's discharge. I do not see how *Boone* is on point.

The second basis identified in the majority opinion is the contract language providing for semiannual meetings of the Drivers Committee. It is appropriate to give this provision the most favorable reasonable interpretation possible. Having done so, I am still unable to agree that the provision in any way suggests the existence of a just cause limitation.

The majority cites several cases which involved situations where the parties created a mutual grievance procedure. *E.g. Boone; Monaghan.* All these cases involved a grievance procedure in which management as well as labor participated. Arguably, a mutual grievance procedure, like arbitration, is meaningless unless there are some instances in which an employee may not be discharged. If the employer's discretion to discharge is unlimited, the effect and purpose of arbitration or conciliation are nullified. But that situation does not exist here. In the case at bar, the contract merely provides that labor representatives will hold a meeting among themselves twice a year. There is no obligation for those representatives to forward employee grievances to management, or for management to pay any attention if they attempt to do so. The Drivers Committee has at best done nothing more than set out an internal operating procedure of its own. Kerrville has not compromised its freedom to discharge in any way.

Finally, in referring to the rules set out in the Drivers Rule Book, the majority states: "Given the parties' understanding that certain conduct would furnish cause for termination, it is reasonable to infer that any discharge would be for cause." In other words, any time an employer enumerates some specific grounds for discipline, he may be held to have impliedly limited his right to discharge to cases where there is just cause. I cannot agree. Listing some reasons for discipline does not mean there must be some reason for discharge. According to the majority, Kerrville would have been better off had it not set out some

bases for discipline. The employer should not be penalized for voluntarily warning its employees that delineated types of prohibited conduct will result in discipline.

None of the three grounds relied on by the majority singly or in combination evidence to me an intent to create a just cause limitation. Nor can I find any other evidence to indicate that the parties intended a just cause limitation. Certainly, there was no express limitation. "Dismissal for cause" was never even referred to. There was no provision for arbitration. There was no mutual grievance procedure. Kerrville did not limit discharges to those based on specified causes.[1] There was no provision for tenure, or anything remotely resembling tenure. There was no union hiring hall arrangement.[2] In sum, there was simply no proof of a mutual intention on the part of the Drivers Committee and Kerrville to limit the right Kerrville otherwise had to discharge an employee for any reason or no reason at all.

The majority does not expressly hold that a just cause limitation is implicit in every collective bargaining agreement. However, this is the import of its decision. I would not presume a just cause limitation here. The employer ought not be required to bargain for a negating proviso such as "The employer reserves the right to discharge any employee for any reason or no reason at all."

A court should not rewrite the parties' contract. Rather, it should look to the objectively manifested intent of the parties without bias in favor of either party. Because I believe the majority has failed to do this, I respectfully dissent.

### ON PETITION FOR REHEARING AND SUGGESTION FOR REHEARING EN BANC

Before CLARK, Chief Judge, THORNBERRY and POLITZ, Circuit Judges.

1. The first paragraph in the Drivers Rule Book reads:

   1. POLICY; It is the policy of the Company to have only reasonable and necessary rules. The duties and responsibilities of the Driver are prescribed by the rules contained in this Rule Book, *and by such additional rules, orders, instructions, bulletins and directives as may be issued by Management.*
   (emphasis supplied).

PER CURIAM:

The Petition for Rehearing is DENIED and no member of this panel nor Judge in regular active service on the Court having requested that the Court be polled on rehearing en banc, (Federal Rules of Appellate Procedure and Local Rule 35) the Suggestion for Rehearing En Banc is DENIED.

For the reasons assigned in his dissent, Chief Judge Clark would grant panel rehearing.

2. In *Lowe v. Pate Stevedoring Co.,* 558 F.2d 769 (5th Cir.1977), cited by the majority, this court affirmed the district court's finding that a just cause limitation could be "inferred as a part of the basic fabric of the collective bargaining agreement." *Id.* at 771 n. 3. We so held only because the agreement created a hiring hall arrangement whereby workers were routinely hired on a day-to-day basis as needed. Thus, there was never any occasion for an employer to "discharge" in the usual sense. *Id.*