818 F.2d 29
 125 L.R.R.M. (BNA) 2352
 Unpublished Disposition
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
NATIONAL LABOR RELATIONS BOARD, Petitioner,
v.
COMMUNICATIONS WORKERS OF AMERICA, AFL-CIO, Respondent.
 No. 86-1203.
 United States Court of Appeals, Fourth Circuit.
 Argued Feb. 4, 1987.
Decided May 4, 1987.
 
 Before PHILLIPS and WILKINSON, Circuit Judges, and SPENCER, United States District Judge for the Eastern District of Virginia, sitting by designation.
 James Bryan Coppess (Adair, Scanlon & McHugh, P.C.; John L. Quinn, on brief), for respondent.
 Karen Ruth Cordry, National Labor Relations Board (Linda Dreeben, Supervisory Attorney; Rosemary M. Collyer, General Counsel; John E. Higgins, Jr., Deputy General Counsel; Robert E. Allen, Associate General Counsel; Elliott Moore, Deputy Associate General Counsel, on brief), for respondent.
 PER CURIAM:
 
 
 1
 In this proceeding the National Labor Relations Board invokes our jurisdiction under 29 U.S.C. Sec. 160(e) to enforce its order dated May 30, 1986. The Board, adopting the recommendation of the administrative law judge, found that refusal by the Communications Workers of America, AFL-CIO ("CWA") to agree to the preparation, use and cost-sharing of official transcripts of certain arbitration hearings constituted an unfair labor practice' under CWA's collective bargaining agreement with the Chesapeake and Potomac Telephone Company ("C & P"). CWA expressly disavows any challenge to the Board's findings of fact or interpretation of the National Labor Relations Act, basing its resistance to the Board's order on the contention that the Board misconstrued the collective bargaining agreement. For the reasons that follow, enforcement will be granted.
 
 FACTS
 
 2
 Through the years, the parties' collective bargaining agreements have required that the parties share the cost of arbitration proceedings, but have not expressly provided for preparation, use and cost-sharing of official transcripts of such proceedings. Article 13 of the collective bargaining agreement, entitled "Arbitration," provides in pertinent part that arbitration hearings "shall be conducted in accordance with the Voluntary Labor Arbitration Rules of the American Arbitration Association ...." ("VLAR"). Rule 21 of the VLAR imposes the cost of hearing transcripts only on the parties ordering copies of such transcripts. However, between 1951 and 1983, when the present controversy arose, CWA and C & P shared the costs of a court reporter and an official transcript in every regular[2] arbitration proceeding save one.
 
 
 3
 In January 1982, CWA announced that as of February 1, 1982 it would cease sharing the cost of official arbitration hearing transcripts in order to reduce its expenses. C & P responded that this proposed change in the arbitration procedure was a mandatory subject of bargaining, and threatened to file a charge with the Board if CWA went ahead with its announcement. CWA did not implement any change in cost-sharing arrangements as announced.[3] Arbitration procedures were matters for local bargaining under the collective bargaining agreement that expired in August 1983. On the morning of August 27, 1983, at which time the parties had reached agreement on most issues affecting the new agreement, CWA's chief negotiator handed C & P's chief negotiator a notice containing an announcement basically identical to its announcement of January 1982. The C & P negotiator asked his counterpart to withdraw the notice so that it would not complicate final negotiations. The CWA negotiator took back the notice and the local agreement was finalized without consideration of its contents. Later, CWA transmitted the same notice to C & P by letter.
 
 
 4
 CWA stopped agreeing to transcript preparation and cost-sharing in October 1983. Since then, C & P has arranged for a reporter to be present at arbitrations and for the preparation of a transcript for the arbitrator's and its own use. CWA is given access to a transcript at C & P's offices to facilitate preparation of CWA's brief to the arbitrator. C & P has borne the full cost of this procedure, subject to recoupment of one-half from CwA in the pending proceeding.
 
 DISCUSSION
 
 5
 The contested issue below was whether the preparation, use and cost-sharing of official transcripts in typical arbitration proceedings constituted mandatory subjects of bargaining under 29 U.S.C. Sec. 158(d). The Board's conclusion that these matters were mandatory subjects of bargaining depended on its finding that they were implied terms in the parties' collective bargaining agreement. The correctness of this finding, which involved the application of familiar contract principles, is a question of law which we review de novo. See Texas Gas Transmission Corp. v. Shell Oil Co., 363 U.S. 263 (1960) (where Federal Power Commission rested its determination on ordinary contract interpretation rather than on matters within its special competence, court of appeals was justified in making independent contractual interpretation).
 
 
 6
 A written contract may include both express and implied terms.
 
 
 7
 Where no particular requirement of form is made by the law a condition of the validity or enforceability of a contract, there is no distinction in the effect of a promise whether it is expressed in writing, or orally, or in acts, or partly in one of these ways and partly in others.
 
 
 8
 Restatement (Second) of Contracts Sec. 19 comment a (1979). Moreover, "the provisions of a labor contract may be more readily expanded by implication than those of contracts memorializing other transactions." Smith v. Kerrville Bus Co., Inc., 709 F.2d 914, 917 (5th Cir. 1983). CWA's consistent participation in the process of preparation, use and cost-sharing of arbitration transcripts over more than thirty years implies its assent to that process as a component of, the collective bargaining agreement's express requirement that the parties share the cost of arbitration proceedings. Transcript procedures were not among the matters committed to CWA's discretion under the collective bargaining agreement, therefore CWA's unilateral departure from those procedures while the agreement was in force constituted an unfair labor practice. See, e.g., NLRB v. Baltimore News American Division, 590 F.2d 554 (4th Cir. 1979).
 
 
 9
 The administrative law judge carefully considered CWA's contention that Rule 21 of the VLAR, rather than the parties' long-standing course of conduct, controlled transcript procedures. We think the administrative law judge's conclusions on this issue are correct. The collective bargaining agreement, by its plain language, adopts the VLAR in its entirety (rather than Rule 21 alone) for the limited purpose of governing the manner in which arbitration hearings are conducted. Nothing in either Rule 21 or the VLAR as a whole prohibits the parties from agreeing to the preparation, use and cost-sharing of a transcribed record of arbitration hearings.[4] Because the parties did so agree by implication in the collective bargaining agreement, CWA did not have what it terms the "right to make a different choice" while that agreement was in force.
 
 
 10
 CWA contended below that during the 1983 contract negotiations it gave C & P notice of its intention to change the established practice concerning transcripts, and that by failing to request bargaining on this issue, C & P waived its right to complain about CWA's failure to bargain on this matter. The administrative law judge found this contention lacking in factual support. CWA has not challenged the factual findings below and has not pressed its waiver argument before this Court. Accordingly, we will not consider it further.
 
 
 11
 Finding no error in the decision of the Board, we grant enforcement.
 
 
 12
 ENFORCEMENT GRANTED.
 
 
 
 [1]
 29 U.S.C. Sec. 158(b)(3)
 
 
 [2]
 The parties amended their contractual arbitration provisions in 1977 to provide for an "expedited" arbitration procedure to be used for most employment suspension grievances and other matters mutually agreed to on a case-by-case basis. The present enforcement proceeding does not concern expedited arbitrations
 
 
 [3]
 CWA and C & P's parent company agreed shortly afterward to conduct a trial program in which the preparation and use of official transcripts in certain nonexpedited arbitrations would be drastically limited. C & P was not among the subsidiaries involved in this program
 
 
 [4]
 The administrative law judge found that the parties had in fact consistently deviated from the VLAR in areas other than the manner in which arbitration hearings were conducted