LOCAL UNION NO. 2286 OF the INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, AFL–CIO, Plaintiff,

v.

GULF STATES UTILITIES COMPANY, Defendant.

Civ. A. No. B–89–0972–CA.

United States District Court, E.D. Texas, Beaumont Division.

Oct. 12, 1990.

Hal K. Gillespie, David K. Watsky, Hicks, Gillespie, James & Rosen, Dallas, Tex., for plaintiff.

James W. Hambright, Orgain, Bell & Tucker, Beaumont, Tex., for defendant.

MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT'S AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

COBB, District Judge.

THE FACTS

Plaintiff International Brotherhood of Electrical Workers, Local 2286 (the Union) and Defendant Gulf States Utilities Compa-

ny (the Company) have filed cross motions for summary judgment. This lawsuit is before the court because the parties cannot agree on the meaning of their Collective Bargaining Agreement (Agreement). The conduct giving rise to this lawsuit first occurred sometime in 1985 and continues to the present time at the Company's River Bend Nuclear Plant in St. Francisville, Louisiana. The Union asserts that the Company breached the Agreement by doing two things: first, assigning the lead Radiation Protection Technician, a Union employee, the task of doling out daily work assignments to other technicians; and second, assigning that same lead Radiation Technician the task of acting as gatekeeper to "very high radiation areas" in the nuclear plant. (Union's Motion for Summary Judgment at p. 3)

The Union claims that Radiation Technicians may be required to perform only the tasks that are spelled-out in the "Job Qualification" sheets (referred to by the parties as the "Bluebook" and incorporated into the Agreement by Article X thereof) for such employees and that the Agreement was broken when the Company required the lead Radiation Technician to do a job not spelled-out in that sheet. The Union further claims that the gatekeeping task is supervisory, i.e. non-union.

The Company counters with two arguments: first, that Article II of the Agreement, entitled "Management Rights", vests the Company with broad discretion concerning work assignments; and second, that the "Job Qualifications" contained in the Bluebook are not job descriptions. That is, the Company asserts that the "Job Qualification" sheets contain only the minimum of tasks which an employee may be called upon to perform; that the words of the "Bluebook" are not meant as outer limits on what a Union employee may be asked to do at the nuclear plant.

The parties have not arbitrated this dispute because their Agreement does not allow arbitration of this issue.[1]

The parties have, however, exhausted the grievance process outlined in the Agreement. The grievance process resulted in a decision by the Company that its actions were a valid exercise of management's rights. Now the parties have entrusted this court with the task of interpreting their Agreement. To aid the reader, the remaining pertinent and illustrative provisions of the Agreement and the Bluebook are reproduced in the margin.[2]

---

1. Article VII of the Agreement, entitled "Arbitration" reads:

1. The following subjects shall not be subject to arbitration, and no arbitrator who may be chosen to serve in any arbitration proceeding shall have power to make an award which touches upon such subject.

Subcontracting or contracting out work, changes in salary and wage rates shown in "Exhibit A", expansion or curtailment of Employer's operations or facilities, determination and establishment of new or improved methods of operation or discontinuance of old methods, employee benefit plans, *work assignments, and contents of job classifications.* (emphasis added)

2. [collective bargaining agreement provisions:]

ARTICLE II
MANAGEMENT RIGHTS

Employer retains all of the rights and functions of Management, except to the extent they are expressly and specifically modified or limited by the written, specific provisions of this Agreement. Some of the rights retained by Employer include, but are not limited to, the right, power and authority to manage Employer's operations and to direct the working force; to hire and assign employees of its own selection and determine the number to be employed; to maintain efficiency; to extend, maintain, curtail, sell or terminate all or any part of the operations of Employer; to determine the size and locations of Employer's facilities; to determine and establish new or improved methods or facilities; to discontinue old methods or facilities; *to prepare job qualifications and establish job classifications; to assign and reassign the work to be performed by employees or classifications of employees as Employer may deem necessary or expedient; to establish and change work schedules and assignments* ...

\* \* \* \* \* \*

... *except as the foregoing may have been modified by, or contrary to, any specific written terms or provisions of this Agreement.*

The above rights of Management are not all-inclusive, but indicate the type of matters where rights shall belong to or are inherent to Management. (emphasis added)

ARTICLE X
EMPLOYEE CLASSIFICATION

Job titles, job classifications, and minimum job qualifications, as set forth in the *Employee*

## THE LAW

This court has jurisdiction over the subject matter pursuant to § 301 of the Labor Management Relations Act, 29 U.S.C. § 185(a). Personal jurisdiction and venue are not contested. This court notes that venue is proper pursuant to 28 U.S.C. § 1391(b), (c). Summary judgment is appropriate because there is no genuine issue as to any material fact. Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

 Collective bargaining agreements should be interpreted based on their plain and literal meaning so as to avoid interference with the private bargain. *N.L.R.B. v. South Central Bell Tel. Co.,* 688 F.2d 345, 353 (5th Cir.1982), *cert. denied,* 460 U.S. 1081, 103 S.Ct. 1768, 76 L.Ed.2d 342 (1983).

When interpreting a collective bargaining agreement, a court should first look to the explicit language of the document for clear manifestations of intent. *International Union v. Yard–Man, Inc.,* 716 F.2d 1476, 1479 (6th Cir.1983), *cert. denied,* 465 U.S. 1007, 104 S.Ct. 1002, 79 L.Ed.2d 234 (1984).[3] First, the court finds the language used in the management rights clause of the Agreement (Article II) extremely clear and unambiguous (note court's emphasis therein) and that the Agreement contains, in Article XVI, an express "integration" or "merger" clause. The management rights clause endows the Company with broad and sweeping authority to assign Union workers as it sees "necessary or expedient." According to the same article of the Agreement, the discretion of the Company can only be limited or modified by "specific

*Classification Standards,* are by this reference adopted as a part of this Agreement.

### ARTICLE XVI
### RATIFICATION AND DURATION

\* \* \* \* \* \*

All other Agreements between the Employer and the Union are superseded and cancelled by this Agreement on the day that this Agreement becomes effective.

\* \* \* \* \* \*

["Bluebook" provisions:]
### QUALIFICATIONS PERTAINING TO
### ALL JOBS

In addition to the special personal qualifications quoted in the Job Qualifications, a person who desires to become and remain an employee of Gulf States Utilities Company *must meet the following general qualifications:*

1. Pass a physical examination ...

\* \* \* \* \* \*

4. Be willing, in case of an emergency, or during rush periods, to help in any department, or in any phase of the Company's ᴐper-ations.

\* \* \* \* \* \*

10. If taking a message or other information to be relayed, write down: date and time of a call, name of person and phone number, message or information, and signature or initials.
11. Have the formal or informal education that is required for the performance of a particular job.

\* \* \* \* \* \*

### RADIATION PROTECTION TECHNICIAN
### 1ST CLASS JOB NO. 128

A. JOB QUALIFICATIONS:

Under directive supervision, with some latitude for planning or laying out of working details, must be able to perform complex radiological controls departmental tasks including the following and related work as assigned:

1. Provide comprehensive radiological controls and ALARA recommendations ...

\* \* \* \* \* \*

12. Comply with established procedures ...

\* \* \* \* \* \*

B. EXPERIENCE AND SPECIAL QUALIFICATIONS:
1. High school diploma or equivalent.

\* \* \* \* \* \*

6. Know the location of and be able to operate all of the firefighting equipment ...
7. Be able to write and review work procedures.

C. PHYSICAL QUALIFICATIONS:
1. Age—22 minimum.

\* \* \* \* \* \*

D. PERSONAL QUALIFICATIONS:
1. Be particularly alert in observing hazards and avoiding accidents.

\* \* \* \* \* \*

5. Be able to receive and transmit orders and instructions in such a manner as to inspire respect and confidence of both supervisors and subordinates.

\* \* \* \* \* \*

7. Be capable of assuming supervisory responsibilities.

\* \* \* \* \* \*

**3.** When courts construe collective bargaining agreements, they are not bound by the same rules as when interpreting ordinary business contracts; extrinsic evidence of intent and implication is more readily reviewable. *Smith v. Kerrville Bus Co.,* 709 F.2d 914, 917 (5th Cir. 1983). However, the parties have not appended to their motions any materials (e.g. affidavits, past contracts, letter agreements) which would cause this court to stray from the express terms of the Agreement and its incorporated terms.

written terms or provisions of [the] Agreement."

Second, the court finds that the "Bluebook" or "Job Qualifications" are not modifications of or limitations on the broad and sweeping authority of the Company to assign workers. The language in the Bluebook is also clear and unambiguous. Nowhere in the Bluebook provisions filed with this court does there appear any language that would support the Union's position that the "Job Qualifications" are actually "job descriptions." For instance, the provisions are entitled "Qualifications" and the word "qualifications" is used throughout. Nowhere in the Agreement do the words "job" and "description" appear together. The words that do appear together include: "must meet the following general qualifications"; "be willing ... to help"; "have the formal or informal education"; "must be able to perform"; "be capable of"; etc. In short, these words express the minimum, and not outer limits on what Union employees of the job category at issue can be expected to perform.

Thus, when the Company chose to assign a Union employee to perform the gatekeeping tasks outlined above, it was acting fully within the express and unambiguous parameters of the Agreement. No contract has been broken here.

■ The Union has cited to the court three published Labor Arbitration decisions. The court finds these materials unpersuasive for the following reasons. First, according to the Agreement, arbitration cannot be employed to settle this dispute. So, why should this court be persuaded by the decisions of arbitrators in other, unrelated disputes? Second, as a matter of law, labor arbitration decisions are not binding precedent on a United States District Court, although they may serve as reliable indicators of the state of the common law of industrial relations. *See Smith v. Kerrville Bus Co.,* 709 F.2d at 918 n. 2; *N.L.R.B. v. South Central Bell Tel. Co.,* 688 F.2d at 352 n. 8. Finally, and most significantly, the decisions cited by the Union are simply not on point.

*Allied Plant Maintenance,* 88 LA 963 (1987) involved a collective bargaining agreement wherein a particular class of workers was endowed with "overall responsibility" for performing their particular type of tasks. Such limiting language does not appear in the Agreement or Bluebook in the instant matter. Some language in *Allied Plant Maintenance* is, however, instructive. Therein, the arbitrator quotes one of his colleagues as stating: "[a]n arbitrator cannot ignore clear-cut contractual language", nor may he "legislate new language, since to do so would usurp the role of the labor organization and the employer." In this sense the court is cast as an arbitrator and refuses to ignore clear-cut language and refuses to usurp the role of the parties to this dispute when they negotiated the agreement now before this court.

*Amax Coal Co.,* 82 LA 846, the second arbitration case cited by the Union, is similarly off the mark. That case involved a collective bargaining agreement with work classification clauses far more burdensome on the employer than the Agreement at issue herein. The arbitrator's decision in that case is therefore unpersuasive to this court.

The last arbitration case cited by the Union is *United States Steel Corp.,* 82 LA 910 (1984). The arbitrator sided with the union in that case. It seems the Union is citing cases about apples to support a case about oranges. The facts are simply too different for the case to be helpful to the Union's position. In *United States Steel Corp.* all parties agreed that the collective bargaining agreement contained "job *descriptions.*" (emphasis added) And the language of the job descriptions in that case was very restrictive, imposing affirmative obligations on the employer, unlike the open-ended wording of the job classifications agreed to by the Union and the Company in this case.

The court notes, however, that after undertaking its own research into the interesting world of arbitration decisions it has uncovered many decisions which buttress the Company's and this court's position today. *See, e.g. Western Fuels,* 1988 BNA

Unp. LA LEXIS 5055 and *Assoc. Electric Cooperative*, 84 LA 1020 (1984). The court declines to analyze factually these decisions. Perhaps too much has already been written. This is a clear-cut dispute concerning clear-cut contract language.

Finally, the Company has also moved for recovery of costs and attorney's fees. The L.M.R.A. does not expressly allow for awards of costs or attorney's fees. And, the general rule in the United States of America is that each party bears his own costs and attorney's fees, absent a statutory grant. *General Tel. Co. v. I.B.E.W., Local 89*, 554 F.2d 985, 987 (9th Cir.1977). Since the court does not believe that either litigant pursued its claim in bad faith, a sanction in the form of an award of costs or attorney's fees is unwarranted. *Id.*

In summary, no breach of the collective bargaining agreement having occurred as a matter of law, Defendant Gulf States Utilities Company's motion for summary judgment is hereby GRANTED and Plaintiff I.B.E.W., Local 2286's cross motion for summary judgment, including its motion for a permanent injunction, is hereby DENIED. Each party is to bear its own costs and attorney's fees.

SO ORDERED.