748 F.2d 1049
 118 L.R.R.M. (BNA) 2164, 102 Lab.Cas. P 11,286
 Ben SMITH, Plaintiff-Appellant,
v.
KERRVILLE BUS COMPANY, INC., Defendant-Appellee.
 No. 84-1328
 
 Summary Calendar.
 United States Court of Appeals,
Fifth Circuit.
 Dec. 20, 1984.
 Barry H. Beer, James M. Heidelberg, San Antonio, Tex., for plaintiff-appellant.
 Shelton Padgett, Dawn Bruner Finlayson, San Antonio, Tex., for defendant-appellee.
 Appeal from the United States District Court for the Western District of Texas.
 Before RUBIN, RANDALL, and TATE, Circuit Judges.
 ALVIN B. RUBIN, Circuit Judge:
 
 
 1
 Applying the six-months statute of limitations contained in Sec. 10(b) of the National Labor Relations Act ("NLRA"), the district court dismissed this suit by an employee against his employer for violation of a collective bargaining agreement, removed to federal court under Sec. 301 of the Labor Management Relations Act ("LMRA"), and, there being no federal cause of action, refused to entertain the later asserted pendent state tort claims. Because this is simply a straightforward breach of contract suit, albeit by an employee, not a union, the district court should have applied the state statute of limitations that the Supreme Court held applicable in United Auto Workers v. Hoosier Cardinal Corp.[1] and, since that statute had not run, should have considered whether the pendent state-law claims were sufficiently related to the breach-of-contract action to be entertained with it. Accordingly, we reverse the judgment of dismissal and remand for further proceedings.
 
 I.
 
 2
 Ben Smith commenced this action in Texas state court, contending that he was wrongfully discharged by Kerrville Bus Company, Inc. Kerrville removed the action to federal court because Smith's claim of wrongful termination was predicated upon an alleged breach of the collective bargaining agreement governing the terms and conditions of Smith's employment and, as such, was a proceeding under Sec. 301 of the LMRA.[2] The district court then granted Kerrville's motion for summary judgment holding that the collective bargaining agreement imposed no limitation upon its common law right to discharge an employee. We reversed and remanded the case, finding that the following issues of fact remained to be resolved:
 
 
 3
 (1) Whether the Drivers Rule Book promulgated and issued by Kerrville to bus drivers constituted a part of the collective bargaining agreement.
 
 
 4
 (2) If so, whether the Drivers Rule Book, together with the collective bargaining agreement, placed a "just cause" limitation upon Kerrville's common law right to dismiss employees at will.
 
 
 5
 (3) If so, whether Kerrville had "just cause" to terminate Smith's employment.[3]
 
 
 6
 Smith later filed a motion to amend his complaint in which he sought to add several alternative pendent state tort claims, including common law fraud, intentional infliction of emotional distress, and common law negligence. The case was assigned for trial, arguments were presented by counsel, and a jury was selected. Counsel for Kerrville then brought to the court's attention the recently rendered Supreme Court decision in DelCostello v. International Brotherhood of Teamsters,[4] which held that hybrid Sec. 301/fair representation actions are subject to the six-months statute of limitations period contained in Sec. 10(b) of the NLRA.[5] The district court granted a continuance of the trial and later dismissed the action, based upon the holding of DelCostello. The district court, therefore, has never decided the three factual issues that remained unresolved when the case was first remanded. For purposes of this appeal, we assume that the Drivers Rule Book was a part of the agreement, that it limited Kerrville's right to discharge employees, permitting discharge only for just cause, and that Kerrville did not have such cause to fire Smith.
 
 II.
 
 7
 Kerrville, a common carrier engaged in the intrastate transportation of passengers, negotiated a collective bargaining agreement with the Drivers' Committee, the labor organization that represents Kerrville's drivers. The agreement provided for biannual meetings of the Committee for the purpose of disposing "of accident and bonus questions, and any other grievances." The agreement contained no provision for arbitration of grievances and nothing purporting to make decisions reached at these meetings final. The parties agree that the collective bargaining agreement may be enforced by suit under Sec. 301 of the LMRA.
 
 
 8
 From time to time, Kerrville and other common carriers of passengers utilize a private investigative firm to conduct unannounced audits of their employees. As part of these audits, investigators pose as passengers at various points between terminals and purchase their tickets with cash. When the driver completes his run, these "cash fares" are checked to determine whether the driver has reported the proper amount of cash.
 
 
 9
 As a result of an audit of Smith, a driver who had more than twenty-five years of service, it was determined that his "cash fares" were "short" a sum less than ten dollars, and he was discharged from employment on July 2, 1979, for "mishandling company property." Within a few days of Smith's discharge, members of the Drivers' Committee met with the President of Kerrville to discuss his discharge and argued for his reinstatement. The discussions were completed by September, 1979, and Kerrville's President refused to reinstate Smith. The Drivers' Committee took no other action on behalf of Smith. Neither Smith nor the company suggests that Smith has any complaint or any basis for complaint against the Drivers' Committee for breach of its duty fairly to represent Smith.
 
 III.
 
 10
 On its face, Sec. 301 of the LMRA allows actions between labor organizations and employers to be brought in federal district court for an alleged violation of a collective bargaining agreement.[6] An individual employee may invoke Sec. 301 as a jurisdictional basis for suit against his employer for breach of a collective bargaining agreement.[7] If the agreement contains grievance or arbitration provisions, the employee must attempt to exhaust them,[8] and he is bound by the finality provisions of the agreement, subject to very limited judicial review.[9] When the employee's union representative breaches its duty of fair representation in the grievance procedure, the employee may sue both the union and the employer, notwithstanding the outcome or the finality of the arbitration or grievance procedure.[10] In Vaca v. Sipes,[11] the Supreme Court held that an employee is entitled to bring such a hybrid Sec. 301/fair representation suit against his employer if he proves a breach of duty by his union and a breach of contract by his employer.[12] An employee may sue his employer, his union, or both, but must prove a cause of action against both the union and the employer to establish his Sec. 301 claim.[13]
 
 
 11
 On several occasions, the Supreme Court has considered the question of the appropriate statute of limitations to be applied to actions brought under Sec. 301. Although the Court has looked to state statutes of limitations governing breach of contract actions to determine the appropriate limitations period when a union sues an employer for breach of the collective bargaining agreement,[14] the ascertainment of an appropriate limitations period when an employee sues both his employer for breach of contract and his union for failure to perform its duties of fair representation[15] has proved more troublesome. The Supreme Court first considered the appropriate limitations period for such combined actions in United Parcel Service, Inc. v. Mitchell,[16] in which the parties argued the applicability of alternative state statutes of limitations to the hybrid Sec. 301 suit. Limited by the record before it, the Court ruled that a state statute of limitations governing the vacating of arbitration awards would govern the particular action presented to the Court.[17] However, the majority opinion, the concurring opinions of Justice Blackmun and Justice Stewart, and the concurring and dissenting opinion of Justice Stevens, as well as the Court's later opinion in DelCostello v. International Brotherhood of Teamsters, all note that the Court was not considering the applicability of the six-months limitations period set forth in Section 10(b) of the NLRA because the "petition for certiorari in Mitchell presented only the question of which state statute of limitations should apply."[18]
 
 
 12
 DelCostello,[19] however, was a hybrid action brought by an individual employee, and the issue was whether the six-month limitations period in Sec. 10(b) of the NLRA applied. The Court recognized that many problems would arise if varying state statutes were applied, including the possibility of inconsistent liability findings on essentially the same claims against a union and an employer, and a lack of uniformity between the states. Because the rights asserted by an employee in such suits against his employer and his union were so intertwined, and because many states did not have a specific limitations period for actions brought to vacate arbitrators' awards as sanctioned in the Court's limited decision in Mitchell, an application of the same limitations period to actions against both the union and the employer was required.[20] Finding that state statutes of limitations might preclude the employee from recovering what is due to him from his employer and might unduly prolong the initiation of his suit against the union, the court held that the six-month limitations period is the appropriate limitations period in hybrid Sec. 301/fair representation actions.[21]
 
 
 13
 As the Supreme Court has noted in Lucas Flour Co., "[t]he ordering and adjusting of competing interests through a process of free and voluntary collective bargaining is the keystone of the federal scheme to promote industrial peace."[22] Thus, although the employee gains in bargaining strength through his union's exclusive representation, he "surrender[s] his right to make 'the law of the Job', and his interests are subordinated to those of the bargaining unit as a whole."[23] One of the rights surrendered by the employee is the right to seek judicial review on the merits of his claim that his employer breached the collective bargaining agreement when his employer and his union have negotiated grievance procedure that is meant to result in a final and binding decision.[24] Moreover, courts must compel parties to resort to grievance and arbitration procedures if their dispute is within the terms of their agreement, and any doubt concerning the scope of those procedures is to be resolved in favor of resort to contractual administrative procedures.[25]
 
 
 14
 Smith's suit is founded only on a possible implied just-cause-for-discharge contract term, and as such is a straightforward Sec. 301 suit.[26] We note, as the Court did in DelCostello, when it distinguished Auto Workers v. Hoosier Cardinal Corp., that the Kerrville contract does not involve any agreement to submit disputes to arbitration or "those consensual processes that federal labor law is chiefly designed to promote--the formation of the collective agreement and the private settlement of disputes under it."[27] Like the suit in Hoosier, this suit is closely analogous to "an ordinary breach of contract case."[28] Because the Kerrville agreement contains neither an arbitration clause nor a grievance-dispute-finality clause, it is not like an action to vacate an arbitration award.[29] Indeed, the contractual grievance provision negotiated by the union merely states that the Drivers' Committee shall meet to "dispose of" grievances. It does not provide for any impartial arbiter and gives no indication that it was meant to be a substitute for litigation.[30] Although the Supreme Court has specifically noted the limited scope of its holding in Hoosier,[31] that this suit was brought by an employee rather than the union does not, however, change its nature: it is a straightforward breach of contract claim.
 
 
 15
 Whether the grievance provision, when considered in light of the other facts in this case, is sufficient to imply a just-cause restriction on the employer's right to terminate Smith is a question that we do not consider and that we leave to the trial court's determination on remand. We hold only that the grievance provision does not create the finality that would preclude Smith from pursuing his Sec. 301 claim in federal court or that, absent an allegation of breach of duty by the Committee, would bring his suit within the holding of DelCostello.
 
 IV.
 
 16
 It is not clear whether the district court denied Smith leave to amend to assert his pendent state claims or whether it simply dismissed them. On remand, the district court should determine whether the amended complaint was timely filed,[32] and, if so, whether any or all of the claims asserted should be considered as pendent to the federal Sec. 301 claim, applying the usual criteria,[33] and whether there is any other reason why the amendment should not now be allowed.[34]
 
 
 17
 For these reasons, the judgment is REVERSED and the case is REMANDED for further proceedings consistent with this opinion.
 
 
 
 [1]
 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966)
 
 
 [2]
 29 U.S.C. Sec. 185
 
 
 [3]
 Smith v. Kerrville Bus Co., 709 F.2d 914, 920 & n. 4 (5th Cir.1983)
 
 
 [4]
 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)
 
 
 [5]
 29 U.S.C. Sec. 160(b)
 
 
 [6]
 See 29 U.S.C. Sec. 185(a); see also Hines v. Anchor Motor Freight, Inc., 424 U.S. 554, 561-62, 96 S.Ct. 1048, 1054-55, 47 L.Ed.2d 231, 239-40 (1976)
 
 
 [7]
 Smith v. Evening News Ass'n, 371 U.S. 195, 200, 83 S.Ct. 267, 270, 9 L.Ed.2d 246, 251 (1962)
 
 
 [8]
 Republic Steel Corp. v. Maddox, 379 U.S. 650, 652, 85 S.Ct. 614, 616, 13 L.Ed.2d 580 (1965)
 
 
 [9]
 DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 164, 103 S.Ct. 2281, 2290, 76 L.Ed.2d 476, 488 (1983) (citing W.R. Grace & Co. v. Local 759, 461 U.S. 757, 764, 103 S.Ct. 2177, 2182, 76 L.Ed.2d 298, 305 (1983))
 
 
 [10]
 DelCostello, 462 U.S. at 164, 103 S.Ct. at 2290, 76 L.Ed.2d at 488
 
 
 [11]
 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)
 
 
 [12]
 Id. at 186-87, 87 S.Ct. at 914-15, 17 L.Ed.2d at 855-56
 
 
 [13]
 See DelCostello, 462 U.S. at 164, 103 S.Ct. at 2290, 76 L.Ed.2d at 488; see also Farr v. H.K. Porter, Co., 727 F.2d 502, 505 (5th Cir.1984)
 
 
 [14]
 See United Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966)
 
 
 [15]
 See Vaca v. Sipes, 386 U.S. 171, 87 S.Ct. 903, 17 L.Ed.2d 842 (1967)
 
 
 [16]
 451 U.S. 56, 101 S.Ct. 1559, 67 L.Ed.2d 732 (1981)
 
 
 [17]
 Mitchell, 451 U.S. at 64, 101 S.Ct. at 1565, 67 L.Ed.2d at 741 (1981)
 
 
 [18]
 DelCostello, 462 U.S. at 154 n. 2, 103 S.Ct. at 2285 n. 2, 76 L.Ed.2d at 482 n. 2
 
 
 [19]
 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983)
 
 
 [20]
 DelCostello, 462 U.S. at 167, 103 S.Ct. at 2292, 76 L.Ed.2d at 490
 
 
 [21]
 Id. at 168, 103 S.Ct. at 2292, 76 L.Ed.2d at 490
 
 
 [22]
 Local 174 v. Lucas Flour Co., 369 U.S. 95, 104, 82 S.Ct. 571, 577, 7 L.Ed.2d 593, 599 (1962)
 
 
 [23]
 Harris v. Chemical Leaman Tank Lines, Inc., 437 F.2d 167, 171 (5th Cir.1971)
 
 
 [24]
 See 6 T. Kheel, Labor Law Sec. 26.03, at 26-33 to 26-34 (1984); see also United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 596, 80 S.Ct. 1358, 1360, 4 L.Ed.2d 1424, 1427 (1960)
 
 
 [25]
 See 6 T. Kheel, supra note 24, at 26-33 to 26-34; see also United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582-83, 80 S.Ct. 1347, 1353, 4 L.Ed.2d 1409, 1417 (1960); United Steelworkers of America v. American Mfg. Co., 363 U.S. 564, 567-68, 80 S.Ct. 1343, 1346, 4 L.Ed.2d 1403, 1406-07 (1960)
 
 
 [26]
 See Auto Workers v. Hoosier Cardinal Corp., 383 U.S. 696, 86 S.Ct. 1107, 16 L.Ed.2d 192 (1966)
 
 
 [27]
 462 U.S. at 163, 103 S.Ct. at 2289, 76 L.Ed.2d at 488
 
 
 [28]
 Id. at 163, 103 S.Ct. at 2289, 76 L.Ed.2d at 488
 
 
 [29]
 See id. at 165, 103 S.Ct. at 2291, 76 L.Ed.2d at 489
 
 
 [30]
 See Smith v. Kerrville Bus Co., 709 F.2d at 915 ("the collective bargaining agreement was silent with respect to formal grievance or arbitration mechanisms")
 
 
 [31]
 DelCostello, 462 U.S. at 162, 103 S.Ct. at 2289, 76 L.Ed.2d at 487
 
 
 [32]
 In Chitimacha Tribe v. Harry L. Laws Co., 690 F.2d 1157, 1163 (5th Cir.1982), we said:
 In exercising its discretion, the trial court should consider whether permitting the amendment would cause undue delay in the proceedings or undue prejudice to the nonmoving party, whether the movant is acting in bad faith or with a dilatory motive, or whether the movant has previously failed to cure deficiencies in his prior amendments. The court may weigh in the movant's favor any prejudice that might arise from denial of leave to amend.... [T]he court should consider judicial economy and whether the amendments would lead to expeditious disposition of the merits of the litigation. Finally, the court should consider whether the amendment adds substance to the original allegations, and whether it is germane to the original cause of action.
 See also Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222, 226 (1962); Carson v. Polley, 689 F.2d 562, 584 (5th Cir.1982); Fed.R.Civ.P. 15(a); see generally 6 C. Wright & A. Miller, Federal Practice and Procedure Sec. 1487, at 427-35 (1971).
 
 
 [33]
 United Mine Workers v. Gibbs, 383 U.S. 715, 725-27, 86 S.Ct. 1130, 1138-39, 16 L.Ed.2d 218 (1966); 13B C. Wright, A. Miller & E. Cooper, Federal Practice and Procedure Sec. 3567.1, at 114-45 (1984)
 
 
 [34]
 See, e.g., Belknap, Inc. v. Hale, 463 U.S. 591, ----, 103 S.Ct. 3172, 3177, 77 L.Ed.2d 798, 807 (1983)