Jimmy R. TRIAL, et al.,
Plaintiffs–Appellants,

v.

**ATCHISON, TOPEKA & SANTA FE
RAILWAY COMPANY,**
Defendant–Appellee.

No. 89–2207.

United States Court of Appeals,
Fifth Circuit.

March 12, 1990.

Harry Lee Gillam, Jr., Scott Baldwin, Jr., Scott Baldwin, Baldwin & Baldwin, Marshall, Tex., for plaintiffs-appellants.

Michael A. Smith, John J. Fleps, Chicago, Ill., E. Lawrence Merriman, Merriman, Patterson & Allison, Longview, Tex., for defendant-appellee.

Before THORNBERRY, GARWOOD, and DUHÉ, Circuit Judges.

THORNBERRY, Circuit Judge:

Jimmy R. Trial, et al. ("appellants"), current and former employees of The Atchison, Topeka and Santa Fe Railway Company ("Santa Fe"), appeal from summary judgment granted to Santa Fe for lack of subject matter jurisdiction over the appellants' claims that Santa Fe improperly determined their wages and furloughs. We agree with the district court that the appellants did not allege a breach of the duty of fair representation by the United Transpor-

tation Union ("UTU") within six months of the UTU's refusal to bring a grievance on the appellants' behalf, as required in a hybrid action under the Railway Labor Act ("RLA"). Therefore, we affirm the summary judgment on the ground that the appellants' claims against the UTU were time-barred, and consequently their claims against Santa Fe cannot be considered in federal court.

## I. FACTS AND PROCEDURAL HISTORY

The appellants are fifty-seven individuals who are or were employed by Santa Fe as locomotive firemen and firemen promoted to locomotive engineers. Collective bargaining agreements between Santa Fe and the UTU governed the appellants' employment relationships with Santa Fe. Although the appellants belonged to the Brotherhood of Locomotive Engineers ("BLE"), the UTU, as the bargaining agent for firemen in the unit where the appellants worked, was obligated to represent the appellants in grievances against Santa Fe under the collective bargaining agreements. The collective bargaining agreements between Santa Fe and the UTU established comprehensive mechanisms for extra-judicial resolution of disputes regarding wages and furloughs.

A collective bargaining agreement between Santa Fe and the UTU dating back to 1930 and last amended in 1985 governs the computation and payment of wages to locomotive firemen. Under that agreement, a locomotive fireman who believes he has been improperly compensated must submit a "time claim" to the railroad. The employee may appeal denials of a time claim through a series of informal and formal conferences with Santa Fe officials, and following final rejection by Santa Fe, to arbitration before a division of the National Railroad Adjustment Board ("Board"), pursuant to the RLA. *See* 45 U.S.C. § 153 First (i).

Additionally, in 1972, the UTU and various carriers including Santa Fe executed a mediation agreement, known as the "Man-

ning Agreement." The Manning Agreement governs how Santa Fe may furlough (*i.e.*, temporarily remove from service without pay) surplus firemen for fourteen-day blocks of time during periods of business decline. The Manning Agreement also provides for a comprehensive mechanism of negotiation and arbitration to resolve disputes regarding the complicated calculations used to determine whether there has been a decline in business, disputes regarding the resulting furloughs, and individual claims for compensation. Representatives designated by the railroad and the UTU must first meet and attempt to resolve any such disputes. Disputes that are not thus settled in a conference with the individual railroad must be submitted to a National Disputes Committee for arbitration.

The appellants contacted the UTU in March 1986 asking that UTU representatives be designated to assist them in filing grievances about their furloughing as provided in the Manning Agreement. The UTU responded on April 4, 1986, with a letter saying the UTU could not help them and implying that they should join the UTU. The appellants later asked the BLE to assist them with their grievances regarding furloughs, but the BLE informed them that only the UTU could handle their grievances, because the UTU was the bargaining agent for firemen. Santa Fe declined to provide the BLE with any information relating to the appellants' furloughs.

The appellants did not pursue their grievances against Santa Fe on their own through the administrative channels established by the collective bargaining agreements. They did not bring their claims to the Adjustment Board for arbitration, even though the RLA allows an employee to process a claim to the Board without the assistance of the union. 45 U.S.C. § 153 First (i) & (j). Instead, the appellants filed this suit for breach of contract against Santa Fe on August 24, 1987, in Texas state court. They claimed that since 1980 Santa Fe had improperly computed their wages by failing to give them credit for mileage and hours worked in accordance with the contracts in effect. This had the result, according to the appellants, of caus-

ing them to be wrongfully furloughed. The appellants also alleged that the wrongful furloughing in turn deprived them of additional mileage and hours, and that Santa Fe's acts were committed intentionally and amounted to fraud, concealment and deceit.

Santa Fe removed the case to the United States District Court for the Eastern District of Texas. Santa Fe moved for summary judgment and alternatively to strike the plaintiffs' demand for punitive damages and for a jury trial. The district court granted summary judgment on the ground that the appellants' claims against Santa Fe were time-barred because they did not allege unfair representation by the UTU within six months of the UTU's refusal to handle their grievances.

## II. DISCUSSION

### A. Standard of Review

■ The standard of review at the appellate level of a district court's grant of summary judgment remains the same as at the trial court level. *Ayo v. Johns–Manville Sales Corp.*, 771 F.2d 902, 904 (5th Cir.1985). The pleadings, depositions, answers to interrogatories, and admissions on file, together with any affidavits, must demonstrate that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Id.;* Fed.R.Civ.P. 56(c). *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265, 273–75 (1986). Under this standard, fact questions are considered with deference to the nonmoving party. *Reid v. State Farm Mut. Auto. Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986). The nonmoving party must designate specific facts to support its allegations. *Bache v. American Tel. & Tel.*, 840 F.2d 283, 292 (5th Cir.), *cert. denied,* — U.S. ——, 109 S.Ct. 219, 102 L.Ed.2d 210 (1988). The appellate court decides questions of law just as it decides questions of law outside the summary judgment context: *de novo. Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir.1988); *Brooks, Tarlton, Gilbert, Douglas & Kres-*

sler v. United States Fire Ins. Co., 832 F.2d 1358, 1364 (5th Cir.1987).

## B. Hybrid Actions

■ The National Railroad Adjustment Board ("Board") has exclusive jurisdiction over a railroad employee's grievances against the railroad involving the interpretation or application of a collective bargaining agreement. 45 U.S.C. § 153 First (i); Andrews v. Louisville & Nashville R.R. Co., 406 U.S. 320, 325, 92 S.Ct. 1562, 1565, 32 L.Ed.2d 95 (1972); Brown v. American Airlines, Inc., 593 F.2d 652, 654 (5th Cir. 1979). Judicial review of Board decisions is narrowly limited to review of whether the Board has failed to comply with RLA requirements, whether the Board has exceeded its jurisdiction, or whether there was fraud or corruption by a Board member. 45 U.S.C. § 153 First (p) & (q).

■ The appellants' breach of contract claims in this case necessarily involve interpretation of the collective bargaining agreement and the Manning Agreement, and thus must first be prosecuted to arbitration by the Board, through administrative channels as set out in the RLA. Even state law claims such as fraud must be resolved by the Board if they are inextricably intertwined with the grievance process and necessarily involve interpretation of a collective bargaining agreement. Leu v. Norfolk & Western Ry. Co., 820 F.2d 825, 829 (7th Cir.1987); Stephens v. Norfolk & W. Ry. Co., 792 F.2d 576, 580 (6th Cir. 1986). Ordinarily, therefore, the district court would not have jurisdiction to consider claims against an employer subject to the RLA like the claims made by the appellants here, because first the appellants would have to exhaust their administrative remedies under the RLA.

■ An exception to the exclusive jurisdiction of the Board exists, however, when the employee has not only a dispute with the employer involving interpretation of the collective bargaining agreement, but also a claim against the union for breach of the union's duty of fair representation. In that situation, the employee may bring a "hybrid" action alleging claims against both the union and the employer. See, e.g., Glover v. St. Louis–San Francisco Ry. Co., 393 U.S. 324, 328–29, 89 S.Ct. 548, 550–51, 21 L.Ed.2d 519 (1969); Brock v. Republic Airlines, Inc., 776 F.2d 523, 525 (5th Cir.1985).

Hybrid actions are recognized under both the RLA, e.g., Glover, 393 U.S. 324, 89 S.Ct. 548, and the Labor Management Relations Act ("LMRA"), e.g., DelCostello v. International Brotherhood of Teamsters, 462 U.S. 151, 164–65, 103 S.Ct. 2281, 2290–91, 76 L.Ed.2d 476 (1983). A hybrid action brought under the LMRA does not have to join both the employer and the union as defendants; it is sufficient for the employee to sue one or the other, but the employee must prove a cause of action against both. DelCostello, 462 U.S. at 165, 103 S.Ct. at 2291; Smith v. Kerrville Bus Co., Inc., 748 F.2d 1049, 1053 (5th Cir.1984). The Fifth Circuit has not yet decided whether an employee bringing a hybrid suit under the RLA must join the union as a party.[1]

The appellants brought the action at bar only against Santa Fe, the employer, and not against the UTU. The appellants' complaint, however, contains an allegation that the appellants "have not been fairly represented in the premises and therefore this cause of action is their only remedy." The appellants also presented some evidence that the UTU wrongfully refused to prosecute their claims against Santa Fe because the appellants were not members of the UTU. The appellants urge this court to find that these allegations that the UTU breached its duty of fair representation suffice to confer jurisdiction in the district court over their claims against Santa Fe, and that under DelCostello it was unnecessary for them to join the union as a defendant.

1. One circuit has found that a federal court has jurisdiction over a hybrid action under the RLA only if both the railroad and the union are parties and if the employee alleges collusion between the railroad and the union. Hodges v. Atchison, Topeka & Santa Fe R.R. Co., 728 F.2d 414 (10th Cir.), cert. denied, 469 U.S. 822, 105 S.Ct. 97, 83 L.Ed.2d 43 (1984).

Some courts have found that an allegation that the union breached a duty of fair representation by wrongfully failing to pursue a grievance is an insufficient ground for allowing the employee to by-pass RLA administrative remedies and proceed directly to federal court in a hybrid action. *See Rader v. United Transportation Union*, 718 F.2d 1012, 1014 (11th Cir. 1983); *Essary v. Chicago & N.W. Transp. Co.*, 618 F.2d 13, 17 n. 6 (7th Cir.1980); *Zysling v. Atchison, Topeka & Santa Fe R.R. Co.*, No. CA–2–85–59, 121 L.R.R.M. (BNA) 2879, 2880, 1985 WL 6051 (N.D.Tex. 1985). *Compare Vaca v. Sipes*, 386 U.S. 171, 185, 87 S.Ct. 903, 914, 17 L.Ed.2d 842 (1967) (exhaustion of administrative remedies is unnecessary if the union wrongfully refuses to process the employee's grievance under a collective bargaining agreement governed by the LMRA and the National Labor Relations Act). This conclusion is based on the provisions of the RLA that allow an employee to process a claim to the Adjustment Board without the concurrence of the union. 45 U.S.C. § 153 First (i) & (j).

We do not reach the issue whether *DelCostello* allows an employee to bring a hybrid suit under the RLA without joining the union as a party, because we find that any claims the appellants in this case may have had against the UTU for breach of its duty of fair representation are time-barred. For the same reason, we also do not reach the issue whether the UTU's wrongful refusal to process grievances sufficed as a breach of the UTU's duty of fair representation under the RLA. Even if the appellants alleged a valid claim that the UTU breached its duty of fair representation, making this action a genuine hybrid action, and even if the holding of *DelCostello* on the non-necessity of suing both the union and the employer were to extend to hybrid actions brought under the RLA, we hold that summary judgment was proper in this case because the appellants did not bring the action containing allegations of unfair representation by the UTU within six months of the accrual of their claim against the UTU.

## C. Statute of Limitations

■ The United States Supreme Court has held that the six-month limitations period in section 10(b) of the National Labor Relations Act controls hybrid actions brought under the National Labor Relations Act and the Labor Management Relations Act. *DelCostello*, 462 U.S. at 169–172, 103 S.Ct. at 2293–94; *see* 29 U.S.C. § 160(b). The Fifth Circuit has extended the six-month statute of limitations to govern hybrid actions brought under the Railway Labor Act, since the federal policies and interests articulated in *DelCostello* in support of a six-month limitations period are also present in RLA cases. *Brock v. Republic Airlines, Inc.*, 776 F.2d 523, 526 (5th Cir.1985); *see also Landry v. Air Line Pilots Ass'n Int'l AFL–CIO*, 892 F.2d 1238, 1245 (5th Cir.1990). Thus, the appellants in this case can pursue their hybrid action only if they raised their allegations that the UTU breached its duty of fair representation within six months of the alleged breach. The limitations period under the RLA begins to run when the claimants discover, or in the exercise of reasonable diligence should discover, the acts that form the basis of their duty of fair representation claim. *Dozier v. Trans World Airlines, Inc.*, 760 F.2d 849, 851 (7th Cir. 1985); *see also Landry*, 892 F.2d at 1247.

■ The appellants first alleged that the UTU breached its duty of fair representation no earlier than August 24, 1987, when they filed this suit. The appellants rely on the UTU's letter of April 4, 1986, as the basis for their contention that the UTU wrongfully refused to represent them. In that letter the UTU refused to designate representatives from among the appellants for the purpose of examining Santa Fe's furlough records and suggested that the appellants should become members of the UTU and help the UTU. That letter constituted notice to the appellants that the UTU was not going to pursue their grievances. In fact, that letter provides the only specific support for the appellants' allegations that the UTU wrongfully refused to prose-

cute their grievances.[2]

The appellants should have brought a claim against the UTU within six months of receiving the UTU's letter. Instead, they waited to bring this action until some sixteen months after receiving the letter; thus, their claim against the union is time-barred. Consequently, the district court has no jurisdiction to reach the appellants' claims against Santa Fe as part of a "hybrid" action. The appellants cannot establish the jurisdictional predicate that the UTU breached its duty of fair representation, since the claims against the UTU are time-barred. *See Holmes v. Greyhound Lines, Inc.*, 757 F.2d 1563, 1567 (5th Cir. 1985).

■ The appellants argue for the first time on appeal that the UTU letter was not clearly a refusal to prosecute their grievances and that a fact issue exists as to when they discovered or should have discovered that the UTU was not going to prosecute their grievances. They contend that summary judgment was improper because their uncontradicted summary judgment evidence shows they were not aware until less than six months before this suit was filed that the UTU did not intend to prosecute their claims. They refer to two identically worded affidavits by Barry W. Banner and Travis Cowin, two of the appellants, in which the affiants stated that "the said Plaintiffs herein filed this lawsuit within six months of the time that they learned the UTU was not going to represent them and prosecute their claims and grievances in connection with this matter." These statements are conclusory, however, and make no mention of specific facts concerning when or how the appellants contend they did receive notice of the UTU's refusal to represent them. *Cf. Bache v. American Tel. & Tel.*, 840 F.2d 283, 292 (5th Cir.), *cert. denied*, —— U.S. ——, 109 S.Ct. 219, 102 L.Ed.2d 210 (1988) (employees alleging in part that their union failed to prosecute their grievances could not defeat a summary judgment motion on that

issue because they did not state any specific facts supporting their allegations, such as the date they informed the union of their grievances). On the other hand, the same affidavits refer to the April 4, 1986 letter, saying, "Instead of acting upon the requests made by these Plaintiffs to prosecute their claims and grievances against said Railroad, the UTU and its representatives admonished the Plaintiffs that the[y] should join the UTU union. See the letter attached and marked Exhibit A."

The appellants did not submit any evidence that would raise a genuine issue of material fact as to when they discovered or should have discovered the UTU's alleged breach of its duty of fair representation. The evidence presented, even when considered with deference to the appellants, shows that they had notice of the UTU's refusal to pursue their grievances when they received the April 4, 1986 letter.

■ The appellants further argue that even if this court finds that they knew of the UTU's alleged breach of duty more than six months before filing suit, their allegations of fraud and collusion should have tolled the six-month statute of limitations. The appellants alleged in their complaint that Santa Fe committed fraud in furloughing the appellants and calculating their wages. But the appellants have not presented any facts explaining how *Santa Fe's* alleged fraud might have prevented them from discovering any breach of duty by the *UTU*, which is the cause of action governed by the six-month limitations period.

The RLA provides a two-year statute of limitations for actions for judicial review arising under its own provisions—*i.e.*, for review of an Adjustment Board order on grounds that the Board has failed to comply with RLA requirements, that the Board has exceeded its jurisdiction, or that there was fraud or corruption by a Board member. 45 U.S.C. § 153 First (p)–(r); *Brock*, 776 F.2d at 526–27. In this case, the fraud that the appellants allege was allegedly committed by Santa Fe, not by an Adjust-

---

**2.** The appellants also submitted a letter from the BLE, dated September 21, 1987 (after this lawsuit was commenced). Although the appellants at times point to the BLE letter as the conclu-

sive notification that the UTU would not pursue their claims, that letter merely informed them that the UTU was the only union that had the power to process their grievances.

ment Board member. Therefore, the appellants' claims of fraud "fall entirely outside the parameters of *Brock*," and the two-year statute of limitations does not apply. *Landry*, 892 F.2d at 1246.

As for collusion, the appellants do not clearly articulate their claims of collusion even in their brief, and it appears that they did not argue the existence of any collusion by the UTU and Santa Fe in the district court below. They did not present any specific facts that would raise a fact issue as to collusion between Santa Fe and the UTU. Hence their claims of collusion cannot withstand summary judgment.

## III. CONCLUSION

We hold that summary judgment was proper in this case because the appellants did not bring the action containing allegations of unfair representation by the UTU within six months of the accrual of their claim against the UTU. The evidence shows that they had notice of the UTU's refusal to pursue their grievances when they received the April 4, 1986 letter, yet they did not bring this action until August 24, 1987. Although the appellants contend that their allegations of fraud and collusion tolled the limitations period, they presented no evidence that would raise a genuine issue of material fact as to fraud or collusion.

Since the claims against the UTU are time-barred, the appellants cannot show that the UTU breached its duty of fair representation; therefore, they lack the jurisdictional predicate that would permit a federal court to resolve their claims against Santa Fe. The district court did not have jurisdiction over their claims against Santa Fe because the National Railroad Adjustment Board had exclusive jurisdiction.[3]

For the foregoing reasons, the judgment of the district court is AFFIRMED.

---

**3.** As we decide this case based on the statute of limitations, we do not address the appellants' argument, raised for the first time on appeal, that arbitration before the Adjustment Board would have been futile because of the composition of the Board.