# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

September 27, 2010

No. 10-50324
Summary Calendar

Lyle W. Cayce
Clerk

JAMES H. FARRIS; SCOTT P. WATTS; ALLAN R. GASCH; SCOTT A. ROHAL; MILO V. MARSHALL; WOODIE JOE JESSEE; V.G. SHAPOVALOV; MATTHEW R. MCCLOSKEY; JEREMY N. ROGERS; JIMMY ESPINOZA; KIRK A. WOLFE; SAL SOSA; AUTRY P. CLIMER; ROBERT T. BORDELON,

Plaintiffs - Appellants

v.

UNION PACIFIC RAILROAD COMPANY,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:09-cv-130

Before HIGGINBOTHAM, SMITH, and HAYNES, Circuit Judges.

PER CURIAM:[*]

The appellants, a group of locomotive engineers employed by Union Pacific Railroad Co. ("Union Pacific"), appeal from the district court's denial of their petition to set aside an arbitration award issued by the National Railroad

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 10-50324

Adjustment Board ("NRAB") pursuant to section 3 of the Railway Labor Act (RLA), 45 U.S.C. § 153 (2006). We find no error in the district court's application of its limited power to review NRAB awards to the undisputed facts of this case and therefore AFFIRM the denial of the petition.

## I. Facts & Procedural History

The arbitration award that is the subject of the appellants' petition was the outgrowth of a seniority dispute resulting from the merger of Union Pacific with Southern Pacific Railroad Company ("Southern Pacific") in 1996. The underlying facts are not in dispute.

The Surface Transportation Board ("STB"), a federal agency created by the Interstate Commerce Commission Termination Act of 1995, Pub. L. No. 104-88, 109 Stat. 803, approved Union Pacific's application to merge with Southern Pacific on August 12, 1996. As a condition of approving the merger, the STB required the railroads to abide by the standard labor-union protections first imposed in *New York Dock Railway*, 360 I.C.C. 60, *aff'd sub nom. New York Dock Ry. v. United States*, 609 F.2d 83 (2d Cir. 1979). Pursuant to the *New York Dock* conditions, Union Pacific was required to negotiate separate merger-implementing agreements ("MIAs") with the unions that represented its employees at each geographic hub; until Union Pacific obtained an MIA at a particular hub, the *New York Dock* conditions required the two merged companies to continue to operate as separate railroads with their unionized employees covered by separate collective bargaining agreements ("CBAs"). Union Pacific's MIA for the San Antonio hub, where all the appellants worked, took effect on June 1, 1999.

The appellants worked as switchmen for Southern Pacific before the effective date of the San Antonio MIA. They belonged to the United Transportation Union ("UTU") and were, until the effective date of the MIA, subject to UTU's CBA with Southern Pacific.

No. 10-50324

In December of 1997, Union Pacific offered its train and yard service employees, including its switchmen, the opportunity to become Union Pacific engineers. Union Pacific did not offer the appellants the opportunity to become engineers at that time because the MIA was not yet in place and the *New York Dock* rules required Union Pacific to treat Southern Pacific as a separate railroad for labor purposes. Later, in May of 1999, Southern Pacific offered the appellants the same opportunity to become engineers for Southern Pacific. In response, the appellants applied and were accepted as engineers.

After the MIA took effect, Union Pacific and Southern Pacific engineers were merged into a single group with a single set of seniority rules. The appellants took the position that they should be, under the several CBAs among Southern Pacific and Union Pacific and the switchmen's union and the engineers' union, granted seniority as against Union Pacific engineers based on their date of hire as switchmen rather than the date of their becoming engineers. The appellants reasoned in part that the unequal opportunity between pre-MIA Union Pacific switchmen and pre-MIA Southern Pacific switchmen to become engineers required this result. Union Pacific, the surviving post-merger entity, disagreed.

The appellants exercised their rights under the RLA to seek arbitration before the NRAB. After briefing and a hearing, the NRAB entered an arbitration award in favor of Union Pacific on May 23, 2008. The arbitration award concluded that Union Pacific had properly determined the appellants' seniority dates under the applicable CBAs and the MIA.

The appellants timely filed a petition to set aside the NRAB arbitration award in the United States District Court for the Western District of Texas as permitted by the RLA. *See* 45 U.S.C. § 153(First)(q) (creating jurisdiction in the district courts to hear petitions to set aside NRAB award); *see also* § 153(First)(r) (setting two-year limitations period for such petitions). The parties filed cross-

No. 10-50324

motions for summary judgment on a stipulated record. After carefully reciting the material facts, the highly deferential standard of review, and the applicable law, the district court granted summary judgment for Union Pacific and denied the appellants' petition to set aside the arbitration award.

After entry of final judgment, the appellants timely appealed to this court.

## II. Standard of Review

We review a grant of summary judgment de novo, applying the same standard as the district court. *Mitchell v. Cont'l Airlines, Inc.*, 481 F.3d 225, 230 (5th Cir. 2007). It is difficult to overstate the level of deference that federal courts must give to the NRAB's arbitration award. The statute creating jurisdiction to entertain the appellant's petition in the federal courts permits the judiciary to set aside an NRAB award if, and only if, (1) the NRAB has failed to comply with the requirements imposed on it by the RLA, (2) the NRAB exceeded its statutory jurisdiction, (3) a member of the NRAB engaged in fraud or corruption. 45 U.S.C. § 153(First)(q); *see also Union Pac. R.R. Co. v. Sheehan*, 439 U.S. 89, 93 (1978).[1] In our review on these three points, we are also required to regard the findings of the NRAB as "conclusive." § 153(First)(p). In consequence, "the range of judicial review in [NRAB arbitration] cases is among the narrowest known to the law." *Diamond v. Terminal Ry. Ala. State Docks*, 421 F.2d 228, 233 (5th Cir. 1970).

## III. Discussion

The appellants assert that two of these limited grounds for vacatur are satisfied here: (1) that the NRAB acted outside its jurisdiction because its ruling bears no rational relationship to the CBAs, and (2) that the award resulted from

---

[1] Our precedent also recognizes that a court with jurisdiction to review the award may set it aside if rendered in violation of a party's constitutional right to due process of law. *See S. Pac. Co. v. Wilson*, 378 F.2d 533, 536–37 (5th Cir. 1967). No due process claim is raised in this appeal.

4

fraud or corruption. The district court concluded, upon careful review of the record, that the NRAB acted within its jurisdiction and did not engage in fraud or corruption. We agree.

*A.    NRAB's Jurisdiction*

The appellants first argue that the NRAB acted outside its jurisdiction in rendering the award that this the subject of this appeal. We have explained that,

> [i]n the arbitration context, an award 'without foundation in reason or fact' is equated with an award that exceeds the authority or jurisdiction on the arbitrating body. . . . The arbitrator's role is to carry out the aims of the [CBA], and his role defines the scope of his authority. When he is no longer carrying out the agreement or when his position cannot be considered in any way rational, he has exceeded his jurisdiction.

*Bhd. of R.R. Trainmen v. Cent. of Ga. Ry. Co.*, 415 F.2d 403, 411–12 (5th Cir. 1969). We may therefore reject an NRAB award as exceeding the arbitrator's jurisdiction if the order is "so unfounded in reason and fact, so unconnected with the wording and purpose of the [CBA] as to 'manifest an infidelity to the obligation of the arbitrator.'" *Id.* at 415 (quoting *United Steelworkers of Am. v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

As explained in detail by the district court, the appellants' argument fails to clear this high hurdle: the arbitrator made a good-faith, reasonable effort to interpret and apply the CBAs to the facts of this case, and our inquiry essentially ceases there. While the merits of the arbitrator's decision are debatable were we to undertake de novo review, we emphasize once again that we "do not sit as super arbitration tribunals" and are definitively barred from "substitut[ing] [our] judgment[] for th[at] of the [NRAB] division[]." *Diamond*, 421 F.2d at 233.

The argument made by the appellants itself belies their effort to contend otherwise: they argue only that the arbitrator applied the *wrong provision* of the

No. 10-50324

CBAs at issue in assessing the appellants' seniority claims. The provision that the arbitrator did apply is at least arguably controlling. *Cf. BNSF Ry. Co. v. Bhd. of Maint. of Way Emps.*, 550 F.3d 418, 425 (5th Cir. 2008) (rejecting NRAB decision where arbitrator's reading was not "an arguable construction of" the CBA). We cannot say that the arbitrator's award is so categorically wrong that it bears no relationship to the governing CBAs, *see Bhd. of R.R. Trainmen*, 415 F.2d at 411–12, nor does it "ignore[] an explicit term in a CBA," *see BNSF Ry.*, 550 F.3d at 425. The appellants merely disagree with the arbitrator's reading of interrelated provisions of the multiple applicable CBAs. Thus, the appellants have not met their burden of showing that the arbitrator's ruling bore so little relationship to the CBAs as to have exceeded the NRAB's jurisdiction.

B.    *Fraud or Corruption*

The appellants next complain that some of the parties to the arbitration engaged in fraud. They do not, however, even allege any wrongdoing on the part of the arbitrator. This omission defeats their claims. Section 153(First)(q) allows the arbitration award to be aside "for fraud or corruption *by a member of the division* [viz., an arbitrator] making the order." As the plain statutory text suggests, the appellants were obligated to provide evidence of corruption on the part of the arbitrator, not on the part of parties to the arbitration. *See Trial v. Atchison, Topeka & Santa Fe Ry. Co.*, 896 F.2d 120, 125–26 (5th Cir. 1990). We explained in *Trial* that a claim does not fall within the judicial review provisions of § 153 where "the fraud that the appellants allege was allegedly committed by [the railroad employer], not by an [NRAB] member." *Id.*; *see also Woodrum v. S. Ry. Co.*, 750 F.2d 876, 882 (11th Cir. 1985) (noting that § 153(First)(q) limits vacatur to "cases of 'fraud or corruption by a member'" instead of the "more usual [rule] allow[ing] reopening without such limitation in case of any kind of fraud generally"). The appellants do not allege fraud on the part of the NRAB arbitrator, and their claim therefore fails.

6

No. 10-50324

## IV. Conclusion

For the foregoing reasons, the well-reasoned opinion of the district court is AFFIRMED.